McKean, Chief Justice,
 

 delivered a circumstantial and learned charge to the jury. He said, that the want of a court with equitable powers, like those of the chancery in England, had long been felt in Pennsylvania. The institution of such a court, he observed, had once been agitated here, but the houses of assembly, antecedent to the revolution, successfully opposed it; because they were apprehensive of increasing, by that means, the power 1 and influence *of the governor, who claimed it as a right to bo chan- -* cellor.
 
 (a)
 
 For this reason, many inconveniences have been suffered. No adequate remedy is provided for a breach of trust; no relief can be obtained in cases of covenants with a penalty, &c. This defect of jurisdiction has necessarily obliged the court, upon such occasions, to refer the question
 
 *129
 
 to tbe jury, under an equitable and conscientious interpretation of the agreement of the parties; and it is upon that ground, the jury must consider and decide the present cause,
 
 (a)
 

 His Honor, having recapitulated the evidence, concluded with the fol lowing observations:—
 

 The bond is made payable in current money of Pennsylvania; but, 1 would ask, what is the
 
 current money of Pennsylvania?
 
 For my part, I know of none, that can properly be so called, for current and lawful are synonymous. In Great Britain, the king, by his proclamation, mav render any species of coin a lawful currency. But here, it can only be done by an act of assembly;' and except in the temporary laws for supporting the former emissions of paper-money, there is no pretence that the legislature has ever interfered upon this subject. The expressions in the 2d section of the act of the 27th January 1777 (P. L. p. 6), cannot be construed to make the Spanish milled dollars a legal tender, as they are only mentioned by words of reference; but that which was declared to be a lawful tender, and consequently became the legal currency of the land, was the money emitted under the authority of congress.
 
 (b)
 

 To that species of money, therefore, the bond must be taken to relate; and the jury will either reduce the penalty to gold or silver, according to the scale of depreciation; or, if they think it more equitable, they will find a verdict for the value of the tobacco, and give the plaintiffs legal interest from the day of the sale.
 

 The jury adopted the latter opinion, and found for the plaintiffs with 3600Í. damages, and
 
 6d.
 
 costs.
 

 (a)
 

 A court of chancery was actually established in Pennsylvania, in the year 1720, during the administration of Sir William Keith, and exercised jurisdiction for several years. Some of its proceedings are extant, and a few titles to real estate are derived from its decrees. The history of the attempt to establish a court of equity in this state is set forth in a case stated for the opinion of the attorney and solicitor-general of England, in 1736, which, with their answers, is in possession of the present editor. As they have never been published, and will serve to illustrate the legal history of Pennsylvania, it is supposed that, by subjoining them as an appendix to this volume, the editor will render an acceptable service to the profession.
 
 [1]
 

 [1]
 

 The Registrar’s Book of Governor Keith’s court of chancery, long preserved in the secretary’s office in Harrisburg, has since been published as an appendix to William Henry Rawle’s Lecture on Equity in Pennsylvania, where much interesting information on this subject, will be found by the inquiring student of the History of Pennsylvania Law.
 

 (a)
 

 The equitable jurisdiction at present exercised- by the common-law courts of Pennsylvania deserves a more full examination than can be given to it within the usual limits of a note, and a mere reference to the cases in which it has been considered, would serve little valuable purpose. Jt ought to be remarked, however, in this place, for the information of persons not familiar with this peculiar system, that the
 
 jury
 
 are not the administrators of equity, as might be supposed from a passage in the text. It is well settled, that the
 
 court
 
 alone determine whether the party is entitled to relief, and also decide upon the extent and manner of it. The jury only ascertain the facts; and if in their verdict they disregard the rules of equity laid down by the court, the same remedy by a new trial exists, as when they disregai'd the law. See Peebles v. Reading, 8 S. & R. 484; and Kuhn
 
 v.
 
 Nixon, 15 Id. 118.
 
 [1]
 

 [1]
 

 For a full review of ihis interesting question, see 1 Troubat & Haly’s Treatise (5th edition), p. 14,
 
 et seg.
 

 (b)
 

 See Lee v. Biddis,
 
 post,
 
 p. 175; Hartley
 
 v.
 
 McAnulty, 4 Yeates 95; Dorrance v. Stewart, 1 Id. 349; Shelby
 
 v.
 
 Boyd, 3 Id. 321.