JOHN VAN HOESEN,

*vs.*

THE MINNESOTA BAPTIST STATE CONVENTION.

The Minnesota Central University, a corporation, was indebted to the plaintiff in over $800, which he had expressed his willingness to cancel for $400, in such payments and at such times as the friends of the university might choose. The defendant at its next annual meeting, voted to raise $3,300 in three equal annual installments, $400 whereof to be paid in satisfaction of said account, and notified the plaintiff "of the acceptance of his proposition to receive $400 in full for his claim, and that they would pay it in three annual installments, to which the plaintiff assented." The defendant thereafter proceeded during three years next ensuing, to collect money from various Baptist churches and individuals, for its general purposes, among which was the payment of said $400, to an amount exceeding $1,100 in each year, by voluntary subscriptions and contributions, mostly at public meetings. *Held*, that the defendant was not liable to the plaintiff in an action for money had and received, for said $400 or any part thereof. That, whether or not it be true, that on a promise made by A to B, for the benefit of C, an action lies for C against A, it is not applicable to this case, for the donations were voluntary—the defendant's vote gratuitous—the plaintiff's agreement *nudum pactum*—being simply to accept a less sum in full of an ascertained debt to a larger amount, and the undertaking of the defendant, upon which the moneys were contributed, being deemed, in law, to have been made for the benefit of the university, not the plaintiff.

Application to the facts of this case, of the maxim that an action for money had and received will not lie unless the defendant has received a specific sum to the plaintiff's use.

This action was brought in the district court for Dakota

Van Hoesen v. The Minnesota Baptist State Convention.

county, to recover the sum of $400, as money received by the defendant in three equal annual installments, from divers Baptist churches in the State of Minnesota, for the use of the plaintiff and to be paid to him. The action was tried by a referee, who reported in favor of the plaintiff. From the judgment entered upon the report the defendant appeals. ᵀhe case is sufficiently stated in the opinion.

Allis & Williams for Appellant.

Donnelly & Searles for Respondent.

*By the Court*—Ripley, Ch. J.—To support this action for money had and received, the plaintiff must show that the defendant has received or obtained possession of money, which, in equity and good conscience, he ought to pay over to the plaintiff. 2 *Greenl. Ev. sec.* 117.

He insists that it is settled, that, where one makes a promise to another for the benefit of a third person, that third person, though a stranger to the consideration, may maintain an action upon such promise, and that the facts found by the referee bring this case within the rule.

Taking it for granted that it is, as Prof. Parsons says it is, (*Parsons on Cont. b.* 2, *chap.* 1, *sec.* 15,) safe to consider it to be a prevailing rule in this country, that a third party has a right of action on a promise made to another for his benefit, it nevertheless does not seem to us to be applicable to the case at bar ; for, upon the facts found by the referee, the promise, whatever it was, upon which defendant received the money, is not, we think, in law, to be considered as made for the benefit of the creditors of the Minnesota Central University, but for the benefit of that corporation. The money was voluntarily contributed. If, as the plaintiff says it was, it was placed in defendant's hands for the purpose of paying

the debts of the university, it is the university, and not its creditor, which is the *cestui que trust.*

The referee finds that the plaintiff held an account against the Minnesota Central University, a corporation, of $800 and interest, which he had expressed his willingness to cancel for $400, in such payments and at such time as the friends of the university might choose; that the defendant had voted to raise $3,300 in three annual installments of $1,100 each, whereof $400 was to be paid in satisfaction of said account.

This resolution, of course, was wholly gratuitous, and binding on no one. The defendant then appointed a committee "to finish up the whole matter"; whatever powers this might have given the committee, it is found that they "notified the plaintiff of the acceptance of his proposition to receive $400 in full for his claim, and that the defendant would pay the same in three annual installments, to which plaintiff assented."

But the plaintiff was not thereby bound to accept said sum in satisfaction of his demand. There was no consideration for his agreement to do so. A creditor cannot bind himself by a simple agreement to accept a smaller sum in lieu of an ascertained debt to a larger amount, such agreement being *nudum pactum.* 1 *Smith's Lead. Cas.* 444. And whatever the extent of the undertaking upon which defendant received the money may be held to be, it certainly was not to pay the plaintiff his claim in full, or to pay him any sum on account, but therewith to compromise the same.

Such a promise cannot, on the facts found, be said, as a matter of law, to be for plaintiff's benefit. Plaintiff states in his brief that the university was insolvent, but the referee does not so find, and we cannot assume that it was.

For aught that appears, plaintiff's willingness to cancel his claim for less than its face, may have proceeded from the same motives as those by which the donors of the moneys received by defendant were actuated, viz: pure beneficence.

So far we have assumed that the facts found by the referee show that the defendant received of such donors the sum of $133.33 in each of the years ending Oct 1, 1864–65 and '66, upon its promise to apply the same in effecting such compromise. It is obvious that, in such case, the money would not be received by defendant as its own, but neither would it be received as plaintiff's money, but as the money of the donors, in trust to appropriate it in a particular way for the university. The donors might have recovered it back if the compromise should be found impracticable, or they might, so far certainly as plaintiff is concerned, have at any time revoked their directions and thereupon have recovered it back. 2 *Greenleaf Ev. sec.* 119.

It follows that plaintiff could not maintain this action, the defendant having no money of his in its hands. But further, the action will not lie in any event unless the defendant received the specific sum for plaintiff's use. *Chitty on Contracts, p.* 526.

We think the facts do not bear out the conclusion that any specific sum was so received. The referee finds, that during the first of the three years named the defendant received $1341.14; during the second, $1123.45; during the third, $1287.40; and that these were the total receipts for said years over which defendant had control. That after the proceedings mentioned as had by defendant at the meeting on Oct. 28, 1863, "the defendant proceeded to collect money from various Baptist churches and of individuals, for the general purposes of said convention, among which was the payment * * * of the sum of $400 to the plaintiff, and that

the money was raised by voluntary subscriptions and contributions, mostly at public meetings." The referee does not find affirmatively, that said sums were wholly received from those sources, but it is, perhaps, a fair inference from the facts found. It is also found that none of the donations were ordered by the donors to be paid to any one object, except $5 for the "Hastings School."

The object and business of the defendant, according to its charter, is found to be the promotion of the religious and educational interests of the Baptist denomination in the State of Minnesota. The referee does not specify what all the general purposes of defendant, for which it collected this money, were, but that one purpose must have been to pay its current expenses, incurred in the prosecution of the object and business for which it was chartered, would seem not to admit of any controversy.

It further appears that the current expenses of each year were paid out of the receipts of the preceding year. So far as the receipts were used to pay those expenses, they were used for one of the purposes for which they were collected; and we are unable to discover any evidence tending to restrict the defendant in the exercise of its discretion as to which purpose it should apply the money, except the $5 aforesaid.

The plaintiff says that the resolution adopted by the convention, was the only authority it had for paying money upon any of the three objects for which it did pay it, and that that resolution bound defendant to pay plaintiff's claims also. The resolution, as we have seen, was wholly gratuitous on defendant's part, and bound it to nothing so far as the plaintiff was concerned.

But it is said that the donors knew that the defendant had adopted the resolution, and, by contributing the money with

that knowledge, without coupling therewith any conditions of their own, they laid the defendant under the obligation, at least, of an implied contract to apply the fund to the purposes specified in the resolution.

Granting that the facts found by the referee are sufficient to show that the donors had actual notice of the passage of the resolution, the result claimed would not follow, for it appears that the money was not collected under it. The resolution required the convention to raise $3,300 in three annual installments of $1,100 each, to pay for the university building, and cancel $1,500 of the indebtedness standing against it, and to apportion the first of the above-named installments among the associations, together with the expenses of the current year. It does not appear that the first requisite towards impressing a specific character upon the donations, viz: the apportionment aforesaid, was ever made.

But it does appear that the defendant proceeded to collect, of various churches and individuals generally, money for its general purposes. It had a purpose to apply part of the money to cancel plaintiff's debt, but that bound it to nothing so far as plaintiff was concerned. Its general purposes must be taken to have been all within the scope of its charter. It is, then, as if it had said to each donor: "I want your money to use in the promotion of the religious and educational interests of the Baptist denomination, and my purpose is to promote it among other things by using $400 of it in cancellation of plaintiff's claim, but this is a wholly gratuitous intention on my part." We think money delivered on such a statement, is, so far as plaintiff is concerned, received by defendant with the same liberty of changing such intention, as it had before it was given to it.

Judgment reversed.