## JOHNSON *v.* STATE.

Opinion delivered November 19, 1904.

1. GRAND LARCENY—SUFFICIENCY OF EVIDENCE.—Under an indictment for grand larceny of property described as "one watch and chain of the value of $15, and $10 in gold and silver coin and paper currency, money of the United States," evidence that defendant stole $8.30 in silver money of the United States, and a small gold-looking watch of value unknown to the owner, but for which she would not have taken $10, was sufficient to' sustain a finding that the property stolen exceeded $10 in value.   (Page 104.)

2. SAME—VARIANCE IN DESCRIBING MONEY.—Whether an allegation of theft of paper currency, money of the. United States, is sustained by 'proof of stealing a "$2 paper bill," without further description, *quaere.* (Page 104.)

Appeal from Crawford Circuit Court.

JEPTHA H. EVANS, Judge.

Affirmed.

### STATEMENT BY THE COURT.

Albert Johnson was indicted by the grand jury of Crawford County for the crime of grand larceny.

The body of the indictment alleged that Johnson "on the 10th day of May, 1904, in the county of Crawford aforesaid, one watch and chain of the value of $15, and $10 in gold and silver coin and paper currency, money of the United States, and of the property of Julia Rose, unlawfully and feloniously did take and carry away," etc.

On the trial Julia Rose, a witness for the State, testified that she met the defendant in Fort Smith on the 3d of May, and went with him to Van Buren, Ark.   When they arrived there, defendant asked her if she would cook for and board him if he would get her "a place to live."   She agreed to do so, and the defendant procured a place for witness and her son, a boy of 14, to pick strawberries on the farm of one McIntyre.   In

company with the defendant and McIntyre, she and her son went in a wagon to McIntyre's farm, where they picked strawberries.

On the night on which the larceny was committed, the witness slept in a room next to the one occupied by McIntyre. About 12 o'clock at night, after she had retired, the defendant came into the room, and asked for something to eat, and she told him he could find something to eat in the trunk. The defendant procured a light, and went to the trunk, and then left the room. The witness had also money and a watch and a chain in the trunk, and after the defendant left the room she said that "something told her" that he had got her money. She arose and looked for the money, but found that it was missing. She called to McIntyre, and told him of the theft, but the defendant had gone. Continuing, the witness testified as follows: "I did not see the defendant any more until I had him arrested for this offense. I know that I had the money in the trunk, for I counted it that evening, and put it in the trunk. There was one $2 paper bill, eight silver dollars and three silver dimes. There was no gold money in the pocketbook. I had none, and lost none. The watch that was stolen was mine; it was a small gold-looking watch. I do not know what it was worth. It was given to me by a brakeman on the railroad. I would not have taken $10 for it. The chain was one that was made of beads, and went around the neck."

There was other evidence tending to corrobate the testimony of Julia Rose as to the theft, but there was no further testimony as to the value of the watch and chain, and no more particular description of the money than that given in her testimony.

The defendant was convicted, and sentenced to imprisonment for one year in the penitentiary, and he appealed.

*Sam R. Chew,* for appellant.

The burden was on the State to prove that the money was current money of the United States, and that it was gold, silver and paper money, as alleged. 71 Ark. 415.

*George W. Murphy, Attorney General,* for appellee.

RIDDICK, J., (after stating the facts.) This is an appeal from a judgment convicting the defendant of grand larceny. On the trial before a jury in the circuit court, there was no objection made either to the evidence or to the instructions of the court, and the only ground on which a reversal is asked is that the evidence was not sufficient to show that the value of the property stolen exceeded $10, and that therefore defendant should not have been convicted of grand larceny.

It will be noticed that the money alleged to have been stolen is described in the indictment as "$10.30 in gold and silver coin and paper currency, money of the United States." The prosecuting witness in describing the money said that "there was one $2 paper bill, eight silver dollars and three silver dimes." Now, so far as the silver coin is concerned, there can be little doubt that the testimony sufficiently identifies the silver money described in the indictment, for we know that the only silver money current in this State is that coined by the government, and comes within the description given in the indictment as money of the United States. But there is more room for doubt as to whether the statement of a witness that a "$2 paper bill" was stolen sufficiently shows that to have been "money of the United States," as charged in the indictment. A distinction is made by some courts between money of the United States and national bank notes, it being held that the term "money of the United States" includes gold, silver and the treasury notes of the government, which are by law made legal tender, for the payment of debts, but not national bank notes. This view seems to have been taken by this court in several decisions, and is supported by decisions of other States. *Marshall* v. *State,* 71 Ark. 416; *Murphy* v. *Smith,* 49 Ark. 37; *Burton* v. *Brooks,* 25 Ark. 215; *Hamilton* v. *State,* 60 Ind. 193; *Watson* v. *State,* 64 Ga. 61.

In the case of *Marshall* v. *State, supra,* it was said that in this State it was unnecessary in an indictment for larceny of money to describe it as money of the United States, but, having alleged that it was money of that kind, it must be proved as alleged. In indictments for larceny of money, it is, under our statute, only necessary to describe it as gold, silver or paper money, as the case may be; and in this case if the indictment, instead of describing the money as money of the United States,

had alleged that it was gold, silver and paper money of the kind that was current in this State, it would probably have covered all kinds of money in use in this State, and which circulates as such as its par value, including national bank notes, silver and gold certificates, as well as the legal tender treasury notes.

But, without discussing that question further, and assuming that the contention of appellant that, under the decisions above referred to, the proof failed to show the larceny of a $2 bill, paper money of the United States, we will proceed to consider his contention that the value of the other property stolen is not shown to exceed $10, and that, therefore, under our statute, the crime was only petit larceny, and that the conviction for grand larceny was improper. In considering that question, we must remember that the jury have found that the value of the property stolen was over $10. Not only that, but, as the instructions of the presiding judge are not set out in the bill of exceptions, it being only stated that no objection was made to them, we must presume that these instructions were correct in every respect. That being so, if we agree with counsel for appellant that the jury ought not to have considered the "$2 paper bill" in arriving at the value of the property stolen, we must assume that they were so instructed by the circuit judge, and that they obeyed the instruction, but found that the value of the watch and chain, together with the $8.30 in silver, exceeded $10. Now, the value of the $8.30 being known, the controversy is narrowed down to the question as to whether the evidence is sufficient to support the finding of the jury that the value of the watch and chain exceeded $1.70. The only testimony on this point was that the watch was a "small gold-looking watch," and that the chain "was made of beads, and went around the neck." The witness stated that the watch was given to her by a brakeman; that she did not know what it was worth, but that she would not have taken $10 for it. This is certainly very unsatisfactory evidence, for we are not certain whether the value that witness placed on the watch arose from the fact that it was a gift or whether she estimated its market value to be over $10. But the jury had the witness before them, and could get at her meaning much better than we can. As we must presume that the presiding judge instructed them that to constitute grand larceny the actual or

market value of the property stolen must be over $10, their find-
ing shows that they understood the value placed on the watch
and chain by the witness to be her estimate of its market value,
and not that arising from the fact that it was a gift. Now, as the
witness had previously stated that she did not know what it was
worth, her estimate of its value is certainly entitled to very little
weight, and, although the witness said she would not have taken
$10 for the watch, if the conviction of grand larceny depended
alone on the value of the watch and chain, it could not be sus-
tained. But a large discount may be made from her estimate
of the value of those articles, and the conviction yet be sustained.

Taking into consideration the fact that her evidence went
to the jury without objection, to be considered by them for what
it was worth, and that the jury had before them not only her
estimate of the value of the watch, but her description of the
watch and chain, we have concluded that the evidence is suffi-
cient to support the finding that the watch and chain were worth
over $1.70, and this, with the value of the silver coin, was over
$10. *Cohen* v. *State,* 50 Ala. 108.

So, leaving out of consideration the value of the $2 paper
bill, the evidence is still sufficient to sustain the judgment, and it
is therefore affirmed.

HILL, C. J., concurs in the judgment on the ground that
in his opinion it was proper for the jury to take into consid-
eration the value of the paper money stolen.

WOOD, J., dissents, being of the opinion that, under the rule
in *Simpson* v. *State,* 56 Ark. 8, the case should be remanded with
an order that the circuit court assess the punishment as for petit
larceny and give judgment accordingly.