## STATE v. LIVINGSTON QUACKENBUSH. [1]

### July 20, 1906.

### Nos. 14,753—(25).

**Indictment—Unlawful Acceptance of Deposit in Bank.**

The defendant was indicted for a violation of chapter 219, p. 504, Laws 1895 (R. L. 1905, § 5118). The indictment charged that "Livingston Quackenbush did then and there, as a private banker, wrongfully, unlawfully, and feloniously accept and receive on deposit in said bank from one Philip Edelkam, certain money, to wit, the sum of $100, the property of said Philip Edelkam, good and lawful money and current as such under the laws of the said state of Minnesota, and of the value of $100, a better description of which said money is to the grand jury unknown." On objection to the sufficiency of the indictment, *held*:

(a) That the description of the property deposited, when taken in connection with the allegation that a better description is to the grand jury unknown, is sufficient.

(b) Good and lawful money, and current as such under the laws of the state, means good and lawful money such as is in common circulation

[1] Reported in 108 N. W. 953.

in the community. The words "under the laws of the said state of Minnesota" are surplusage.

(c) An indictment under this statute need not allege an intent on the part of the defendant to defraud the depositor. A fraudulent intent is not by the statute made an essential element of the crime.

#### Insolvency of Bank—Presumption.

*Held*, further, that the solvency of a bank is a matter which is peculiarly within the knowledge of its directors and other managing officers, and it is therefore presumed that they have knowledge of the condition of the bank. In a prosecution under this statute for accepting deposits when the bank is insolvent and the insolvency is known to the defendant, or he has good reason to know such fact, the presumption is that he has such knowledge. But the presumption is one of fact, which may be overcome by other evidence.

Defendant was convicted in the district court for Le Sueur county, Morrison, J., of the crime set forth in the opinion, and sentenced to confinement in the state prison for four years. From the judgment and from an order denying a motion for a new trial, defendant appealed. Judgment and order affirmed.

*C. D. O'Brien* and *Thomas Hessian*, for appellant.

*Edward T. Young*, Attorney General, *A. J. Edgerton*, County Attorney, and *H. W. Childs*, for the State.

ELLIOTT; J.

The defendant, Livingston Quackenbush, commenced business as a private banker in Le Sueur in the year 1875, with a capital of about $20,000, and continued in such business until March 2, 1904. On that date he closed the doors of his bank. Thereafter he was adjudged a bankrupt and his property and assets were placed in the hands of a trustee in bankruptcy. On September 12, 1905, he was indicted for the crime of accepting and receiving on deposit on March 1, 1904, from one Philip Edelkam, the sum of $100, when he knew that he, as well as the bank, was unsafe and insolvent. He was thereafter tried and convicted of the crime as charged, and appeals to this court from an order denying a motion for a new trial, and also from the judgment entered on the verdict.

1. The first question arises upon the sufficiency of the indictment. The defendant was charged with the violation of chapter 219, p. 504, Laws 1895 (see R. L. 1905, § 5118), which provides that

> Any officer, director, stockholder, cashier, teller, manager, member, messenger, clerk, person, party or agent of any bank, banking corporation, or association or firm, banking house, savings bank, banking exchange, brokerage deposit company, private bank, or any person, company or corporation, engaged in whole or in part in banking, brokerage, exchange or deposit business in any way; and any person engaged in whole or in part in such business, who shall accept or receive on deposit (in such bank or banking institution as aforesaid), with or without interest, from any person, any money, bank bills or notes, or certificates, or currency, or other notes, checks, bills, drafts or paper circulating as money, when he knows, or has good reason to know, that such bank, banking corporation, association or firm, banking house, savings bank, banking, banking exchange, brokerage, deposit company, private bank as aforesaid is unsafe or insolvent, or that such person is unsafe or insolvent, and any person knowing such insolvency or unsafe condition who shall be accessory to, or permit or connive at the receiving or accepting on deposit therein or thereby, any such deposits as aforesaid, shall be guilty of a felony.

The indictment charged that

> Livingston Quackenbush did then and there as a private banker wrongfully and feloniously accept and receive on deposit in said bank from one Philip Edelkam certain money, to wit, the sum of $100, the property of said Philip Edelkam, good and lawful money and current as such under the laws of the said state of Minnesota, and of the value of $100, a better description of which said money is to the grand jury unknown.

Appellant contends that the indictment is defective, in that it fails (1) to sufficiently designate the money deposited, (2) to allege that it was current and lawful money of the United States, and (3) to allege a fraudulent intent on the part of the defendant.

(a) Under the liberal rules of pleading which prevail in this state, no indictment is insufficient because of any defect or imperfection in matter of form, which does not tend to the prejudice of the substantial right of the defendant upon the merits. While the statute thus dis-

penses with certain formalities which were essential under the old system of pleading, it does not dispense with the essential requirements that the charge must be direct and certain as regards the offense and the particular circumstances thereof. State v. Cody, 65 Minn. 121, 67 . N. W. 798; State v. Howard, 66 Minn. 309, 68 N. W. 1096, 34 L. R. A. 178, 61 Am. St. 403; State v. Clements, 82 Minn. 448, 85 N. W. 229. It must contain such a substantive description of the subject-matter as will inform the accused of what he is charged with taking, and protect him against being put again in jeopardy for the taking of the same property. State v. Anderson, 25 Minn. 66, 33 Am. 455; Bromberger v. U. S., 128 Fed. 346, 63 C. C. A. 76.

The first objection made to this indictment is that it does not sufficiently describe the money which it is alleged that the defendant accepted. Under the strict rules of criminal pleading, it is possible that the description of the money in this indictment, without an allegation of want of further knowledge on the part of the grand jury, would be insufficient. The earlier authorities generally held that the simple statement of the larceny of so many dollars, or so many dollars in money, without a further description of the money, was insufficient. In England, prior to St. 14 & 15 Vict. c. 100, § 18, passed in 1851, it was necessary to specify the particular species of coin. Rex v. Fry, Russ & R. 482; Rex v. Warshaner, 1 Mood. C. C. 466; Archbold, Crim. Pl. Ev. & Pr. (23d Ed.) 77. Since the enactment of this statute it is sufficient to describe the money as money of a designated value.

The former rule has prevailed generally in this country. Brown v. People, 29 Mich. 232; State v. Longbottoms, 11 Humph. 39; 2 Bishop, New Crim. Pr. § 703. Massachusetts seems to have been the only state to adopt a more liberal rule without reference to statute (Com. v. Gallagher, 16 Gray, 240; Com. v. Collins, 138 Mass. 483), although a similar tendency appeared in certain cases in other states. See McKane v. State, 11 Ind. 195; Pyland v. State, 4 Sneed, 357. See particularly the following recent cases: State v. Bartholomew, 69 N. J. L. 160, 54 Atl. 231; Fay v. State (Tex. Crim. App.) 70 S. W. 744 ("seventeen dollars in money, each of the value of one dollar"); Blain v. State, 34 Tex. Crim. 448, 31 S. W. 368; Parrent v. State (Tex. Crim. App.) 76 S. W. 474 ("seven dollars and fifty cents, current money of the United States of America"); Berry v. State, 46 Tex. Crim. App. 420, 80 S.

W. 630; Rowland v. State, 140 Ala. 142, 37 South. 245; Johnson v. State (Ark.) 83 S. W. 651; Wilson v. State (Tex. Crim. App.) 72 S. W. 862.

Upon the authority of the modern decisions the description of the property contained in this indictment is sufficiently definite. It is certainly sufficient in connection with the rule that the grand jury may, within certain limits, give such a description of the property as the evidence before it will justify and allege that further particulars are to it unknown. 2 Bishop, New Crim. Proc. § 705; Com. v. Sawtelle, 11 Cush. 142; People v. Bogart, 36 Cal. 245.

In the early case of State v. Hinckley, 4 Minn. 261 (345), this court held bad for uncertainty an indictment for larceny which described the property stolen as "divers bank bills amounting in the whole to the sum of five hundred dollars, and of the value of five hundred dollars." There was no allegation that a more particular description of the bills was unknown to the jury, and Mr. Justice Atwater, after citing numerous authorities, said: "It is not denied but that the certainty required by the authorities may be dispensed with in one case which forms an exception to the rule, and which is allowed for the necessity of the case only, and in no respect militates against the principle above stated. That case is, when it is impossible for the jurors to state the facts with legal certainty, and when that fact appears in the indictment. This is held as a sufficient excuse for the omission of the proper averments, and is allowed in order to prevent an entire failure of justice. People v. Taylor, 3 Denio, 91; Haskins v. People, 16 N. Y. 347. In this case there is no allegation that a more particular description of the bills was unknown to the jurors; and, indeed, it is not probable that such an allegation could have been truthfully made, as it appears from the case that the bills and coin had been reclaimed. Hence there would seem to be no excuse for the omission more specifically to describe them." State v. Taunt, 16 Minn. 99 (109); State v. Brin, 30 Minn. 522, 16 N. W. 406; Haskins v. People, supra; Lavarre v. State, 1 Tex. App. 685.

In People v. Dimick, 107 N. Y. 13, 14 N. E. 178, the property was described as "the sum of four thousand nine hundred and seventy-five dollars in money of a kind and description to the grand jury unknown and a more particular description of which cannot now be given, of the value of four thousand nine hundred and seventy-five dollars." Mr.

Justice Earl said: "There never was a time in the history of the law when this description of the property obtained would not have been held sufficient. There was the best description which could then be given. The kind of money was unknown. But it was money, currency, a circulating medium of some kind, and, what is more important, it was of the value named. These allegations were sufficient to answer all the tests of the code, to protect all the rights of the defendant, and to enable the court to pronounce judgment 'according to the right of the case.' " The allegation that a more particular description of the money is unknown to the grand jury cannot, under our rule, be traversed by the defendant. State v. Taunt, 16 Minn. 99 (109).

(b) The statute refers to "any money, bank bills or notes, or certificates, or currency, or other notes, checks, bills, drafts or paper circulating as money." The indictment charges the acceptance of "certain money, to wit, the sum of $100, the property of said Philip Edelkam, good and lawful money and current as such under the laws of the said state of Minnesota, and of the value of $100." The appellant contends that this description of the money is insufficient because it describes something that is nonexistent. It will be observed that the statute does not refer to money current under the laws of the United States or of the state of Minnesota. The words "of the said state of Minnesota" have no meaning and may be rejected as surplusage. State v. Boomer, 103 Iowa 106, 72 N. W. 424; State v. Finnegean, 127 Iowa, 286, 103 N. W. 155.

Under the indictment the state was required to prove that the defendant, under the circumstances described in the statute, accepted certain money, good and lawful and current in the state. Money includes "whatever is lawfully and actually current in buying and selling, of the value and as the equivalent of coin." Miller v. Race, 1 Burr. 452; Crutchfield v. Robins, 24 Tenn. 15, 42 Am. Dec. 417; Klauber v. Bigerstaff, 47 Wis. 551, 3 N. W. 357, 32 Am. 773. "Current money" means money which passes from hand to hand and from person to person and circulates through the community. Stalworth v. Blum, 41 Ala. 319. It is synonymous with "lawful money." Wharton v. Morris, 1 Dall. 125, 1 L. Ed. 65. Whatever is intended to, and does actually, circulate as money. Coffin v. Hill, 1 Heisk. 385. Every species of coin or currency. Hopson v. Fountain, 5 Humph. 140. Lawful money.

Black v. Ward, 27 Mich. 191, 15 Am. 162. "Current money," that which is generally used as a medium of exchange. 1 Bouvier, Law Dict. 486. In Wilburn v. Greer, 6 Ark. 255, it was said that the term "good current money of this state" meant current coin of the United States. It is not necessary to use the word "current" in such an indictment. Com. v. Gallagher, 16 Gray, 240; People v. Green, 15 Cal. 512. Nor is it necessary to allege that the money is "lawful money of the United States." People v. Winkler, 9 Cal. 234. It follows that the contention that the indictment is defective because it describes the money as current under the laws of the state of Minnesota is without merit, as the meaningless words may be rejected as surplusage and the remaining allegation proven by evidence of the acceptance of money of the character which ordinarily circulated in the state.

(c) The contention that the indictment is bad because it does not allege an intent on the part of the defendant to defraud is answered by the fact that the statute, under which the indictment was drawn, does not make such intent an essential element of the crime. Except in the case of certain statutory crimes, an act to be criminal must be accompanied by a criminal intent, or such negligence or indifference to consequences as the law regards as equivalent to criminal intent. So, as a general rule, when an action is prohibited and made punishable by statute, the crime must be construed in the light of the common law and a criminal intent is necessary. The legislature may forbid the doing of an act and make its commission criminal without regard to the intention or motive of the doer, and if such appears to be the legislative purpose the courts will give it effect. State v. Heck, 23 Minn. 549; State v. Edwards, 94 Minn. 225, 102 N. W. 697, 69 L. R. A. 667; Com. v. Murphy, 165 Mass. 66, 42 N. E. 504, 30 L. R. A. 734, 52 Am. St. 496; Halsted v. State, 41 N. J. L. 552, 32 Am. 247.

Certain acts, in themselves innocent and indifferent, are made criminal when done under circumstances which experience has taught will probably result in some harm which the law seeks to prevent. As stated by a learned historian of the criminal law, "it would be a mistake to suppose that in order that an act may amount to a crime the offender must intend to commit the crime to which his act amounts, but he must in all cases intend to do the act which constitutes the crime." 2 Stephens, Hist. Crim. Law, 112. In Regina v. Tolson, 23

Q. B. Div. 168, 16 Cox, C. C. 629, the· court said: "Although prima facie, and as a general rule, there must be a mind at fault before there can be a crime. It is not an inflexible rule, and a statute may relate to such a subject-matter and may be so framed as to make an act criminal, whether there has been any intention to break the law or otherwise to do wrong or not. * * * Whether an enactment is to be construed in this sense, or with the qualification ordinarily imported into the construction of criminal statutes that there must be a guilty mind, must, I think, depend upon the subject-matter of the enactment, and the various circumstances that may make the one construction or the other reasonable or unreasonable."

The statute under which this indictment was drawn creates a statutory crime. The act which is forbidden and made criminal is the receiving of money for deposit by a banker when he knows, or has good reason to know, that the bank is unsafe or insolvent. The prohibited act is made criminal without reference to whether the person receiving the money intends to defraud the depositor. As a fraudulent intent is not by the statute made an essential element of the crime, it need not be alleged in the indictment. The indictment states the offense in the terms and language of the statute, and in a case of this character it is therefore sufficient. McCutcheon v. People, 69 Ill. 601; Meadowcroft v. People, 163 Ill. 56, 45 N. E. 303, 35 L. R. A. 176, 54 Am. St. 447; 2 Bishop New Crim. Proc. § 523; Archbold, Crim. Pl. Ev. & Pr. (23d Ed.) 75.

2. Error is also assigned upon the following instruction:

> If one is a banker, or person doing a banking business, and receives on deposit the money of his customer, it is to be presumed that he knows at the time of receiving such deposit whether or not he is solvent. At all events, as he holds himself out to the public and to his customers as being possessed of money and capital, and therefore to be safely trusted, it is his duty to know, and he is under all ordinary circumstances bound to know, that he is solvent, and it is negligence for him not to know of his insolvency.

Portions of this instruction were not particularly applicable upon the evidence, and illustrate the unfortunate custom of giving unnecessary

instructions, which may tend to confuse the jury and increase the probability of error; but, after a very careful examination of the questions involved, we are satisfied that it is substantially correct.

The appellant contends that the state was required to prove that the defendant and his bank were insolvent and that the defendant had actual knowledge of the fact when he received the deposit. Actual knowledge is alleged in the indictment, but under the statute the state made a case when it showed that the defendant knew or "had good reason to know" that he and his bank were insolvent. It was not required to show that the defendant had then actual knowledge that he was insolvent. It was sufficient if it showed that he had good reason to know the fact. Compliance with the statute would sustain the allegation of the indictment. There is nothing unreasonable in the rule that a person who is doing business as a banker is presumed to know whether he is solvent or insolvent. So long as he keeps the doors of his bank open, and thus invites the public to deposit money with him, he impliedly asserts that he is solvent. But the presumption which arises under such condition is one of fact, and not of law. It means simply that the jury is entitled to draw the inference of knowledge from the disclosed relations in which the defendant stood to the bank. The ultimate fact which the state is required to establish must be determined in the light of the presumption, aided or rebutted by the other evidence in the case.

In State v. Cadwallader (Ind. Sup.) 57 N. E. 512, it was held, on a prosecution for violating a statute similar to this, that an officer receiving such deposit, having been president and director and in continuous control of the bank for three years previous to the receipt of the deposits, would be presumed to know of its insolvency, but that such presumption might be rebutted by proof. The court said: "The very object or purpose of the statute is to prevent bankers, brokers, and bank officials, by subjecting them to a criminal prosecution, from receiving deposits when their bank is insolvent. It is certainly evident that the solvency or insolvency of a banking institution is a matter which may be said to be peculiarly within the knowledge of its directors and its other managing officers, and it may therefore be presumed that its directory and other managing officials, so long as they continue to operate the bank, know whether it is solvent or insolvent. * * * It is the imperative duty of such officers, when they receive deposits from the

bank's patrons, to know that the bank is solvent, if, under the circumstances, by the exercise of reasonable diligence, such fact could have been ascertained, if by the exercise of such diligence in making an examination and inquiring in respect to the solvency or insolvency of the bank its true condition could have been discovered, then under such circumstances the presumption will be that they had knowledge of the bank's condition at the time the particular deposit was received." So in Meadowcroft v. People, supra, the court said: "If one is a banker, or a person doing a banking business, and receives on deposit the money of his customer, it is to be presumed that he knows, at the time of receiving such deposit, whether or not he is solvent. At all events, as he holds himself out to the public and to his customers as being possessed of money and capital, and therefore to be safely trusted, it is his duty to know, and he is under ordinary circumstances bound to know, that he is solvent, and it is criminal negligence for him not to know of his own insolvency." This rule is consistent with the general principle that a person is presumed to know what it is his duty to know. Marshall v. Farmers, 85 Va. 676, 683, 8 S. E. 586, 2 L. R. A. 534, 17 Am. St. 84; German v. Wulfekuhler, 19 Kan. 64; U. S. v. Houghton (D. C.) 14 Fed. 544, 547; Martin v. Webb, 110 U. S. 7, 3 Sup. Ct. 428, 28 L. Ed. 49; Williams v. McKay, 40 N. J. Eq. 189, 53 Am. 775.

State v. Dunning (Iowa) 107 N. W. 927, upon which the appellant relies seems to us to rest upon an unnecessarily strict construction of the statute. However that may be, it was decided under a statute which differs materially from the one under which this indictment was drawn. Section 1885, Code Iowa 1897, provides:

> If any such bank, banking house, exchange broker, deposit office, firm, company, corporation or person, shall receive or accept on deposit any such deposits, as aforesaid, when insolvent, any owner, officer, director, cashier, manager, member or person knowing of such insolvency, who shall knowingly receive or accept, be accessory, or permit, or connive at receiving or accepting on deposit therein, or thereby, any such deposits, etc., shall be guilty of felony.

It will be noted that this statute in terms applies to persons who know of such insolvency. The supreme court of Iowa said that the precise

point of the objection was that the instruction authorized a conviction if the jury should find that the defendant, as a reasonable and prudent man, ought to have known that the bank was insolvent when the particular deposit was received.

The Minnesota statute makes the offense the accepting of the deposit when the bank is unsafe or insolvent and that fact is either known to the banker or he has good reason to know it. The words "has reason to know," as here used, must be given force and effect. They materially enlarge the scope of the obligations of the banker, and make him responsible for what he has good reason to know as well as what he actually knows. If he has good reason to know that the bank is unsafe or insolvent when he receives the deposit, he is charged with full knowledge of the fact. A man has good reason to know all facts of which he would have acquired actual knowledge, had he investigated conditions which were suggested by circumstances which were known to him. These words in the statute were evidently inserted for the purpose of preventing a person charged with a violation of the statute from pleading want of knowledge of the things connected with his business which it is his duty to know. The burden is upon him to disclose circumstances which excuse his want of knowledge.

The reference in the charge to negligence must be read in connection with the whole charge, from which it is perfectly clear that the jury could not have been misled.

The instruction with reference to the right of the jury to disregard the uncorroborated evidence of a witness who has sworn falsely with reference to any particular fact, was not strictly accurate; but under the rule stated in Dallemand v. Janney, 51 Minn. 514, 53 N. W. 803, as explained in State v. Henderson, 72 Minn. 74, 74 N. W. 1014, the attention of the court should have been called to the omission of the words "knowingly and wilfully." As this was not done, the error was not available. The evidence was sufficient to justify the jury in finding that the bank was insolvent.

We have carefully considered all the assignments of error, and find nothing erroneous therein which is legally prejudicial to the rights of the defendant.

The order and judgment appealed from are therefore affirmed.