After a careful study of this case, together with the very able opinion of the majority of the Court prepared by Mr. Chief Justice ELLIS, I find myself unable to concur in the conclusion reached.
I am unable to reconcile the majority opinion in this case with the opinion in the case of Kirkland v. State, in which this Court construed Section 5354, Revised General Statutes of Fla., in saying:
"That proposition has been settled by this Court in the case cited by the Attorney General, Smith v. State, 71 Fla. 639, 71 So.2d Rep. 915, in which this Court held that it is within the power of the Legislature to dispense with the necessity for a criminal intent and to punish particular acts without regard to the mental attitude of the doer. And that Section 3481, General Statutes of 1906, which is now Section 5354 of Revised General Statutes, denounces two offenses; one wilful extortion in the charging of fees or *Page 26 
commissions by an officer of the State, and the other 'any malpractice in office not otherwise especially provided for' to which the word 'wilfully' does not apply and in which it is not an element. See also 2 Bishop's New Criminal Prac. Sec. 521-523 (1); 1 Bishop's New Criminal Law, Sec. 302-313."
The statute referred to is quoted in the majority opinion and it appears to me that it was clearly the intent of the Legislature by the provisions of that section to condemn any malpractice in office not otherwise especially provided for, and that it was the intent of the Legislature not to limit the sort of malpractice to that which should consist of malpractice in regard to charging, receiving or collecting fees. That the doctrine of ejusdem generis does not apply to this section of the statute. It was distinctly stated in Kirkland v. State,supra, that one of the offenses condemned by the statute is "any malpractice in office not otherwise especially provided for to which the word 'wilfully' does not apply and in which it is not an element." Neither do I concur in the conclusion reached in the majority opinion, that the action required of the Comptroller under the provisions of Section 4167 may be performed or not, such performance or non-performance being dependent upon the exercise of discretion by the Comptroller. It appears to me that the provisions of this section are mandatory in directing what the Comptroller shall do under certain circumstances. The Comptroller is chargeable with knowledge of the condition of banks under his supervision. The statutes have made it his duty to ascertain and to know the conditions of the banks and the Legislature has placed in his hands the authority and the machinery by which and through which he may and must acquire knowledge of such conditions. He stands as the representative of the people between the unscrupulous, the careless, the inefficient or *Page 27 
the unfortunate banker and the public which entrusts its deposits to such institutions.
The words used in the statute, "reason to conclude," I take it, have the same meaning as "good reason to believe." It is a general principle of law that a person is presumed to know what it is his duty to know. State v. Quackenbush, 98 Minn. 515; 108 N.W. 953, and cases there cited.
Our statutes authorize and require the Comptroller to make, and cause to be made, investigations and examinations of State banks, and the section above referred to requires him to take possession of the property and business of any bank when from any examination made by him, or any bank examiner acting under his authority, he shall have "reason to conclude" that such bank is in an unsound and unsafe condition. What shall constitute such "reason to conclude" must necessarily be determined by the Comptroller, and in weighing the evidence of such facts, he must use honest, fair and impartial judgment, unaffected by any bias or prejudice, love, friendship, hatred, enmity, reward or the hope thereof, and when such judgment shall have been exercised by him he can not be deemed guilty of malpractice in office because of an error in judgment resulting either in assuming possession of the property and affairs of the bank, or in failing to do so. It therefore follows in this case that the indictment charges a conclusion that "Ernest Amos at the time and place aforesaid did then and there commit the offense of malpractice in office" and is defective in that in fails to allege that the official action complained of was the result of corruption, fraud, improper influence or other vicious motive. This is a defect, however, which goes to the sufficiency of the charge and may be properly tested by proper pleading. The first count of the indictment charges that the bank referred to at the time alleged was in an unsound and unsafe condition. It *Page 28 
alleges the particulars wherein its unsound and unsafe condition existed and it alleges that the Comptroller had knowledge of these facts and conditions and that he thereby had "reason to conclude" that the bank was then and there in an unsound and unsafe condition and that under these conditions he failed and neglected to perform that official duty specifically required by the statute to be performed by him, under such conditions. It therefore appears to me that the indictment sufficiently charges an offense under the laws of the State of Florida to bring the case within the rule enunciated in ExParte Prince, 27 Fla. 196; 9 So. 659, and to authorize the issuance of capias, and that a capias issued thereunder constitutes sufficient authority for the arrest of the accused. That defects in the indictment may be reached by proper pleadings in the court having jurisdiction of the cause.