## STATE v. RAYMOND REPS.

223 N. W. 2d 780.

November 1, 1974—No. 44125.

*Warren Spannaus,* Attorney General, *Curtis D. Forslund* and *Jonathan H. Morgan,* Solicitors General, *Robert F. Carolan* and *Kenneth E. Raschke, Jr.,* Special Assistant Attorneys General, and *Jerome A. Schreiber,* County Attorney, for plaintiff.

*William A. Lindquist,* for defendant.

Heard before Knutson, C. J., and Peterson, Kelly, Todd, and Scott, JJ., and considered and decided by the court en banc.

KELLY, JUSTICE.

In the summer of 1971, defendant entered into a written agreement with Margaret Splittstoesser whereby defendant agreed to make certain improvements on the Splittstoesser property for a contract price of $2,561. After defendant had begun performing under the contract, Splittstoesser paid him $2,300 on account in three payments. In December 1971, mechanics liens for supplies used by defendant were filed against the Splittstoesser property by various materialmen.

Defendant was subsequently charged, pursuant to Minn. St. 514.02, and arraigned on the following information:

"I, Jerome A. Schreiber, County Attorney * * * hereby inform the Court that * * * Raymond Reps did willfully, wrongfully and unlawfully fail to use the money paid to him by Margaret Splittstoesser on account of certain improvements made by her as owner of certain real estate * * * after notice of nonpayment of such materials, to-wit: the defendant did not pay outstanding bills * * * incurred by the defendant for materials used by him as contractor when he constructed an addition to the home of Margaret Splittstoesser * * *."

Defendant moved to dismiss the information on the grounds that the facts stated therein do not constitute a public offense. The court made no ruling on the motion, but, pursuant to Minn. St. 632.10, reported the case to this court for decision of the legal

and constitutional questions involved and certified the following questions:

1. Is Minn. St. 514.02, subd. 1, pursuant to which the information herein is filed, unconstitutional:

(a) As repugnant to Minn. Const. art. 1, § 12, prohibiting imprisonment for debt?

(b) As a denial of due process or other constitutional guarantees for the omission of the intent to defraud as an element of the crime of theft established?

(c) As a denial of due process of law, protection against being compelled to testify against oneself, or other constitutional guarantees for the omission as an element of the offense that defendant failed to apply all proceeds received from the owner to the extent needed to the cost of labor, skill, material, or machinery furnished for the improvement?

(d) As a denial of due process of law or other constitutional guarantees in being too vague, indefinite, and uncertain as to when, in point of time with relation to the acts constituting the offense, the crime is committed and, further, for not requiring or defining the relationship necessary between the defendant and parties having unpaid charges which defendant had the duty to pay with the proceeds received from the owner?

(e) As a denial of equal protection of the laws in providing that money paid by the owner must be used first for the payment of the cost of labor, skill, material, and machinery contributed to the improvement by others before those proceeds can be retained by the defendant for the payment of his own personal labor, skill, material, and machinery contributed to such improvement?

2. Is Minn. St. 514.02, subd. 3, unconstitutional as in conflict with constitutional guarantees of due process, trial by jury, protection against being compelled to testify against oneself, presumption of innocence, and proof beyond a reasonable doubt in

that it raises a presumption as to the existence of essential elements of the offense charged?

3. Is Minn. St. 514.02, subd. 3, unconstitutional as a violation of due process or other constitutional guarantees in that it raises a presumption which is illogical, irrational, and not rooted in common experience?

4. Is Minn. St. 514.02, subd. 3 (1), unconstitutional as a denial of due process of law, protection against being compelled to testify against oneself, or other constitutional guarantees, in that it places upon the defendant the burden of going forward with the evidence to prevent the raising of a presumption as to the existence of essential elements of the offense?

5. Is Minn. St. 514.02, subd. 3 (2), unconstitutional as a denial of due process of law or other constitutional guarantees in that it requires the filing of a bond by the defendant to prevent the raising of a presumption as to the existence of essential elements of the offense charged?

1. The preliminary issue is whether the statutory certification procedure is proper in this case. No ruling on defendant's motion for dismissal was made by the district court and, while Minn. St. 632.10 [1] makes no mention of the need for an order or

---

[1] Minn. St. 632.10 provides: "If upon the trial of any person convicted in any district court, or if, upon any demurrer or special plea to an indictment, or upon any motion upon or relating thereto, any question of law shall arise which in the opinion of the judge is so important or doubtful as to require the decision of the supreme court, he shall, if the defendant shall request or consent thereto, report the case, so far as may be necessary to present the question of law arising therein, and certify the report to the supreme court, and thereupon all proceedings in the cause shall be stayed until the decision of the supreme court shall have been made. The county attorney shall, upon the certification of any such report, forthwith furnish a copy thereof to the attorney general at the expense of the county. Other criminal causes in such court involving or depending upon the same question may, if the defendants so request, or consent thereto, be stayed in like manner until the decision of the cause so certified."

an appeal, this court expressed the view in early decisions on this subject that certification in criminal cases must be preceded by a ruling by the trial court. State v. Byrud, 23 Minn. 29 (1876); State v. Smith, 116 Minn. 228, 133 N. W. 614 (1911); State v. Wellman, 143 Minn. 488, 173 N. W. 574 (1919); State v. Lyckholm, 150 Minn. 532, 185 N. W. 291 (1921); see, also, State v. Johnson, 139 Minn. 500, 166 N. W. 123 (1918).

Other and more recent cases, however, have implicitly recognized the propriety of review upon certification without an order or an appeal. State v. Lanesboro Produce & Hatchery Co. 221 Minn. 246, 21 N. W. 2d 792 (1946); State v. Brattrud, 210 Minn. 214, 297 N. W. 713, 134 A. L. R. 1248 (1941). While such a review may not have conferred appellate jurisdiction in the traditional sense, we think it is nevertheless sufficiently appellate in nature, regardless of a trial court ruling, to warrant our determination. The interests of the parties and their opportunity to address the legal issues are the same as if a ruling had preceded the certification or an actual appeal had been pursued. This court's inherent power of review, in any event, is not conditioned by statutory limitations. See, In re Appeal of O'Rourke, 300 Minn. 158, 220 N. W. 2d 811 (1974).

2. The first certified question is whether Minn. St. 514.02, subd. 1, is unconstitutional as repugnant to Minn. Const. art. 1, § 12, prohibiting imprisonment for debt. Minn. St. 514.02, subd. 1, provides as follows:

"Whoever, on any improvement to real estate within the meaning of section 514.01, fails to use the proceeds of any payment made to him on account of such improvement by the owner of such real estate or person having any improvement made, for the payment for labor, skill, material, and machinery contributed to such improvement, knowing that the cost of any such labor performed, or skill, material, or machinery furnished for such improvement remains unpaid, and who has not furnished to the person making such payment either a valid lien waiver as to any

unpaid labor performed, or skill, material, or machinery furnished for such improvement, or a payment bond in the basic amount of the contract price for such improvement, conditioned for the prompt payment to any person or persons entitled thereto for the performance of labor or the furnishing of skill, material, or machinery for the improvement, shall be guilty of theft of the proceeds of such payment and upon conviction shall be fined not more than $1,000 or imprisoned not more than one year, or both."

It is asserted by defendant that such statute is violative of Minn. Const. art. 1, § 12, which provides in part:

"No person shall be imprisoned for debt in this state, but this shall not prevent the legislature from providing for imprisonment, or holding to bail, persons charged with fraud in contracting said debt."

This same issue has been raised in this court on two prior occasions. An early forerunner[2] of the statute now in question made the failure of a contractor, who had received his pay from the owner, to pay his laborers and materialmen, although he might not be guilty of any fraud, a felony punishable by imprisonment. In Meyer v. Berlandi, 39 Minn. 438, 40 N. W. 513 (1888), this court ruled the statute unconstitutional, stating:

"Section 3, if not unconstitutional on other grounds, is clearly repugnant to section 12, art. 1, of the constitution of the state, prohibiting imprisonment for debt. It is not necessary that a contractor be guilty of any fraud or other tort in order to subject

---

[2] G. L. 1887, c. 170, § 3, provided: "Any contractor or sub-contractor receiving the full amount of the money or other consideration due on his contract and failing to pay the person performing any labor or furnishing any material, expended or used in the construction of any building, article or utility, thereby allowing a lien to be filed against such property shall be deemed guilty of obtaining money under false pretenses, and may be punished under the statute made and provided for that offense."

him to the penalties of this section." 39 Minn. 441, 40 N. W. 514.

The issue was again raised in State v. Harris, 134 Minn. 35, 158 N. W. 829 (1916), where the statute[3] provided that misuse by a contractor, "with intent to defraud," of moneys paid him by the owner for improvements constituted larceny. In distinguishing this 1915 statute from the act earlier considered in Meyer v. Berlandi, *supra,* and thereby upholding its constitutionality, the court stated:

"* * * The 'intent to defraud' which is the gist of the act of 1915 was not contained in the act there under consideration, and it is the 'intent to defraud' which makes unlawful and criminal the act prohibited by the statute." 134 Minn. 38, 158 N. W. 830.

A subsequent amendment has, inter alia, eliminated the words "intent to defraud" from the statute.[4] The state contends that this does not remove the element of fraud from the statute, but clarifies and limits the acts or omissions that constitute evidence of fraudulent failure to pay by prohibiting only the knowing failure to undertake any one of three specified courses of action, only one of which involves payment of a debt. The defendant contends that the amendment evinces legislative intent to withdraw fraud as an element of the crime and, alternatively, that the elements of the crime as set forth in the statute do not necessarily in and of themselves add up to constructive fraud or fraudulent intent.

---

[3] L. 1915, c. 105, § 1, provided: "That contractor or subcontractor on any improvement to real estate within the meaning of Section 7020, General Statutes 1913 [Minn. St. 514.01], who with intent to defraud, shall use the proceeds of any payment made to him on account of such improvement by the owner of such real estate or person having any improvement made, for any other purpose than the payment for labor, skill, material and machinery contributed to such improvement, while any such labor performed, or skill, material or machinery furnished for such improvement at the time of such payment remains unpaid for, shall be guilty of larceny of the proceeds of such payment so used."

[4] L. 1971, c. 914, § 1.

Defendant relies on State ex rel. Norton v. Janing, 182 Neb. 539, 156 N. W. 2d 9 (1968), as representative of a distinct line of cases declaring unconstitutional similar statutes in other jurisdictions. The statute there under consideration was similar to Minnesota's in that it provided for furnishing of lien waivers as an alternative to paying the debt, and it did not expressly require a finding of fraud. The state in that case argued that the nature of the transaction and the relationship of the parties were sufficient to establish the fraud necessary to sustain the act. The Nebraska court disagreed, holding the act unconstitutional as permitting a prosecution for a criminal offense for the failure to pay a contractual obligation without proof of fraud.

There is another line of cases, in conflict with those outlined above, which holds that it is within the police power to create a lien or establish a fiduciary relationship as to the money paid to the contractor and to provide criminal punishment for a breach. State v. Hertzog, 92 S. C. 14, 75 S. E. 374 (1912); Pauly v. Keebler, 175 Wis. 428, 185 N. W. 554 (1921); State v. Williams, 133 Wash. 121, 233 P. 285 (1925). In a relatively recent case in this line, People v. Howard, 70 Cal. 2d 618, 75 Cal. Rptr. 761, 451 P. 2d 401 (1969), another statute relating to the diversion of funds received by the contractor for the purpose of paying for labor and materials was upheld on the basis that legislative purpose was to punish for a fraudulent conversion and not for a failure to comply with a contractual obligation. As in the Minnesota statute, fraud was not expressly made an element of the crime. And as the Minnesota statute requires knowledge of nonpayment on the part of the contractor, the California statute required a showing that the failure to pay was "wilful." The court stated (70 Cal. 2d 623, 75 Cal. Rptr. 764, 451 P. 2d 404):

"* * * [A] contractor guilty of such conduct has also acted against good morals and fair dealings, that his conduct has necessarily prejudiced the rights of homeowners * * * and that his acts likewise constitute a 'case of fraud' within the exception to the constitutional ban on imprisonment for debt."

We think the reasoning inherent in this second line of cases supports the constitutionality of Minn. St. 514.02, subd. 1. This statute punishes one who received proceeds for an improvement to real estate knowing that the cost of labor, material, skill, and machinery furnished for that improvement remains unpaid and who further fails to either (1) use the proceeds for the payment of labor, material, skill, and machinery contributed to the improvement, or (2) furnish the person making such payment a valid lien waiver as to the unpaid labor, materials, skill, or machinery contributed to the improvement, or (3) furnish the person making such payment a payment bond for the payment of laborers and materialmen for their contribution to the improvement. A reasonable and practical construction of these provisions is that the contractor, unless he has furnished a lien waiver or payment bond, accepts payment for the improvement in a fiduciary capacity. This imposes a trust character on the payments, and it is a knowing violation of that trust, rather than a failure to pay a debt, which the statute makes punishable. It is in this respect that this statute is distinguishable from those considered in Meyer v. Berlandi, *supra*, State v. Harris, *supra*, and the first line of cases represented by State ex rel. Norton v. Janing, *supra*.

3. The next certified question, 1(b), asks if the omission of the intent to defraud, as an element of the crime of theft established, is a denial of due process.

This court has held that the legislature may forbid the doing of an act and make its commission criminal without regard to the intention or motive of the doer. State v. Heck, 23 Minn. 549 (1877); State v. Edwards, 94 Minn. 225, 102 N. W. 697 (1905); State v. Lanesboro Produce & Hatchery Co. 221 Minn. 246, 21 N. W. 2d 792 (1946). This principle was reaffirmed, at least by implication, in State v. Quackenbush, 98 Minn. 515, 108 N. W. 953 (1906), a case somewhat analogous to the instant case. In that case the defendant's contention that the indictment was defective in that it failed to allege a fraudulent intent was re-

jected by the court on the basis that the statute under which the indictment was drawn did not make intent to defraud an essential element of the crime. The act which was forbidden and made criminal was the receiving of money for deposit by a banker when he knew, or had good reason to know, that the bank was unsafe or insolvent, without reference to intent to defraud.

As to certain statutory offenses, a specific intent may, but need not be, made a portion of the act itself. The violation of the statute may itself constitute the offense and furnish the intent. See, State v. Kremer, 262 Minn. 190, 114 N. W. 2d 88 (1962).

4. Question 1(c), as interpreted by the parties, asks whether Minn. St. 514.02, subd. 1, is rendered unconstitutional by reason of its alternative requirement that proceeds absolutely received for an improvement to real estate be applied to the cost of labor, skill, material, or machinery furnished for the improvement. Defendant argues that this requirement interferes with vested property rights and freedom of contract.

Because Minn. St. 514.02, subd. 1, established a fiduciary relationship, the proceeds are not absolutely received by the contractor, but rather are received in trust. As such, the requirement that they be applied to the costs is an expression of a fiduciary duty rather than a taking of property.

A similar statute in State v. Williams, 133 Wash. 121, 124, 233 P. 285, 286, was held not to be an interference with the liberty of contract because—

"* * * contractors must enter into their engagements with knowledge of the act * * *. There are many situations arising under the laws of this state of which persons acting thereunder must take knowledge, and those provisions enter into and become a part of their contracts. * * * This statute being a proper exercise of the police power, in that its object is the prevention of fraud, becomes a part of every contract covered by its terms."

5. Question 1(d) asks whether the statute is a denial of due process in being too vague as to what point in time the crime is

committed, and in failing to require or define the relationship necessary between the defendant and parties having unpaid charges which defendant had the duty to pay out of the proceeds.

Defendant suggests that the certainty required by due process with regard to the time at which the offense is committed must be established exclusively within the provisions of subdivision 1 of § 514.02, since that subdivision states all the essential elements of the crime. However, in the case of a statute that deals with an offense difficult to define, the entire text of the statute on the subject dealt with may furnish an adequate standard of definiteness. See, 21 Am. Jur. 2d, Criminal Law, § 17.

Taking Minn. St. 514.02 in its entirety, the construction argued for by the plaintiff seems the most reasonable—that the statute's terms are violated if a defendant has received payment and has failed to undertake any one of the three courses of action required by the statute within 15 days after he becomes aware that the costs of labor, skill, material, and machinery contributed to that improvement remain unpaid.

With regard to the required relationship between the parties, Minn. St. 514.02 expressly incorporates the provisions of § 514.01 in its definition of the basic, underlying event as "any improvement to real estate within the meaning of section 514.01," and the required relationships are clearly identifiable when the two sections are read together. Section 514.02, subd. 1, punishes the failure to use proceeds of any payment made by the owner for the payment of labor, skill, material, and machinery "contributed to such improvement." The necessary relationships are tied to this "contribution," as described in section 514.01—"Whoever contributes to the improvement of real estate by performing labor, or furnishing skill, material or machinery * * * whether under contract with the owner of such real estate or at the instance of any agent, trustee, contractor or subcontractor of such owner * * *." This language defines the relationship between the defendant and those persons to whom he owes a duty as prescribed by the statute.

6. Question 1(e) asks whether the statute in question denies equal protection of the laws in providing that money paid by the owner must first be used for the payment of the cost of labor, skill, material, and machinery contributed to the improvement by others before those proceeds can be retained by the defendant for the payment of his own personal labor, skill, material, and machinery contributed to such improvement.

As a general rule the constitutional requirement that all persons shall receive the equal protection of the laws is not violated by legislation which applies only to those persons falling within a specified class if it applies equally to all those within such class and if reasonable grounds exist for making a distinction between those who come within the class and those who do not. 3B Dunnell, Dig. (3 ed.) § 1700, and cases cited at note 19. A statute similar to Minn. St. 514.02 was attacked as class legislation in State v. Williams, *supra*, and was upheld on the basis that "it applies equally to all persons who are similarly situated." 133 Wash. 123, 233 P. 286. The same result on the same question was reached in Pauly v. Keebler, 175 Wis. 428, 185 N. W. 554 (1921), and in State v. Hertzog, 92 S. C. 14, 75 S. E. 374 (1912).

7. Questions 2, 3, 4, and 5, deal with Minn. St. 514.02, subd. 3, and raise the issue of whether an invalid presumption is created. The provision in question reads as follows:

"Subd. 3. Proof that such person failed to pay for labor performed, or skill, material, or machinery furnished within 15 days after receiving notice that the cost of such labor performed, or skill, material, or machinery furnished remains unpaid will be sufficient to sustain a finding that the proceeds of such payment were used for a purpose other than the payment for labor, skill, material, and machinery for such improvement, knowing that the costs of labor performed, or skill, material, or machinery furnished remains unpaid, unless the person;

"(1) Establishes that all proceeds received from the person making such payment have been applied to the cost of labor, skill, material, or machinery furnished for the improvement; or

"(2) Within 15 days after receiving notice shall give a bond or make a deposit with the clerk of district court, in an amount and form approved by a judge of district court, to hold harmless the owner or person having the improvement made from any claim for payment of anyone furnishing labor, skill, material, or machinery for such improvement."

Before a determination can be made as to the validity of the presumption raised by this statute, the nature or character of that presumption must be defined. The words "sufficient to sustain a finding" have no compulsory connotation, so that the presumption here raised is in effect a "permissible presumption" or "prima facie case" [5] having as its primary effect the shifting to the defendant the burden of going forward with evidence. See, McElhone v. Geror, 207 Minn. 580, 292 N. W. 414 (1940) ; State v. Keaton, 258 Minn. 359, 104 N. W. 2d 650, 86 A. L. R. 2d 649 (1960).

The argument against the validity of presumptions in criminal cases is based on the traditional rule that the prosecution has the burden of proving all facts necessary to show commission of the crime and of establishing guilt beyond a reasonable doubt. While the main thrust of the argument is that due process is denied if the legislature goes too far in transferring to the accused by means of a presumption the burden of producing evidence, there are other, less impressive constitutional arguments raised in this case which should first be discussed.

Defendant contends that the statutory presumption conflicts with the constitutional guarantee of trial by jury. This challenge may have validity in the case of mandatory presumptions, but it is difficult to see how a judge's direction that the jury *may* convict invades the jury's function.

Defendant also contends that the presumption compels him to testify against himself. But the presumption does not compel him to be a witness any more than would a case made out by the

---

[5] McCormick, Evidence (2 ed.) § 342.

prosecution solely on the evidence. See, Yee Hem v. United States, 268 U. S. 178, 45 S. Ct. 470, 69 L. ed. 904 (1925).

In support of his primary, due-process argument, defendant cites State v. Edwards, 269 Minn. 343, 130 N. W. 2d 623 (1964), where a statutory presumption of specific intent was held unconstitutional as a denial of due process. The court there stated that "it cannot safely be said that the legislature has the power to establish a valid presumption in a criminal case." 269 Minn. 346, 130 N. W. 2d 625.

This broad language must be read in the context of prior case law left intact by that decision. In State v. Kelly, 218 Minn. 247, 261, 15 N. W. 2d 554, 562, 162 A. L. R. 477, 487 (1944), this court stated:

"While we cannot subscribe to the view that all statutes creating presumptions or prima facie proof to apply in criminal prosecutions are invalid as depriving the defendant of the presumption of innocence, the right to a jury trial, or other constitutional safeguards, neither can we go to the other extreme and adopt the Wigmore doctrine that the legislative power in this respect is unlimited. The test of reasonableness must be applied * * *."

The court was referring to an earlier quotation in its opinion of language from Tot v. United States, 319 U. S. 463, 468, 63 S. Ct. 1241, 1245, 87 L. ed. 1519, 1524 (1943), which read:

"* * * [W]here the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them, it is not competent for the legislature to create it as a rule governing the procedure of courts." (Italics omitted.) 218 Minn. 254, 15 N. W. 2d 559, 162 A. L. R. 483.

This was part of the "rational connection" test for the validity of presumptions which was adopted in the Tot case.

Thus it appears that a statutory presumption which is based upon a rational connection between the fact proved and the ultimate fact which it purports to presume is constitutionally valid

in Minnesota. Those cases cited by defendant which hold various statutory presumptions invalid [6] can be distinguished, if not on this "rational connection" test, on at least two other bases. First, the presumptions in each of those cases, unlike the one here considered, involve the element of specific intent. Second, the presumption in the instant case also meets the alternative test of "comparative convenience of producing evidence" which was applied by this court in McElhone v. Geror, 207 Minn. 580, 292 N. W. 414. Under this test, a statutory presumption in a criminal case meets the requirements of due process if the facts are likely to be much more easily provable by the defendant than by the state, and the nature of the charge and of the facts on which the presumption rests make it fair to call on the defendant to produce evidence. [7]

The fact that a defendant has paid over the proceeds received in conformance with the statute, which fact rebuts the presumption in § 514.02, subd. 3, is clearly more easily provable by that defendant, and the burden of producing such evidence is not an unfair one.

The questions certified to us are answered in the negative and the case is remanded.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

[6] State v. Simon, 163 Minn. 317, 203 N. W. 989 (1925); State v. Townsend, 259 Minn. 522, 108 N. W. 2d 608 (1961); State v. Kelly, 218 Minn. 247, 15 N. W. 2d 554, 162 A. L. R. 477 (1944); State v. Higgin, 257 Minn. 46, 99 N. W. 2d 902 (1959); State v. Keaton, 258 Minn. 359, 104 N. W. 2d 650, 86 A. L. R. 2d 649 (1960).

[7] See, Morrison v. California, 291 U. S. 82, 54 S. Ct. 281, 78 L. ed. 664 (1934). This test was declared to be a mere corollary to the "rational connection" test in Tot v. United States, 319 U. S. 463, 63 S. Ct. 1241, 87 L. ed. 1519 (1943).