SIEMENS BUILDING TECHNOL-
OGIES, INC., a Delaware cor-
poration, Respondent,

v.

PEAK MECHANICAL,
INC., Defendant,

Associated Bank Minnesota, N.A.,
a banking corporation,
Appellant.

No. A04–131.

Court of Appeals of Minnesota.

Aug. 10, 2004.

William M. Hennessey, Wagner, Falconer & Judd, Ltd., Minneapolis, MN, for respondent.

Andrew D. Parker, John W. Munger, Smith Parker P.L.L.P., Minneapolis, MN, for appellant.

Considered and decided by STONEBURNER, Presiding Judge; TOUSSAINT, Chief Judge; and PARKER, Judge.

## OPINION

PARKER, Judge.*

In this action brought under Minn.Stat. § 514.02 (2002) of the mechanics' lien statute, appellant Associated Bank Minnesota, N.A. (bank), appeals from the district court's summary judgment in favor of respondent Siemens Building Technologies, Inc. (Siemens). Siemens sought to recover monies paid to defendant Peak Mechanical, Inc. (Peak), from the foreclosure of a mechanics' lien. The bank had a prior secured interest in the proceeds paid to Peak.

Because the clear language of Minn. Stat. § 514.02 does not apply to a third party who receives payment in the ordinary course of business, we reverse.

## FACTS

This matter arose out of the construction of the Grand Hotel/Minneapolis Athletic Club (the project). Siemens provided services to Peak, a subcontractor to Morcon Construction, Inc., general contractor on the project. In 2001, the project owners defaulted on their payments to the various contractors and subcontractors.

In October 2001, one subcontractor, Quality Drywall, Inc., began an action to foreclose its mechanics' lien against the project; Peak became a party to that lawsuit, asserting a claim that may have included the money it owed Siemens. *See Quality Drywall, Inc. v. 679 East Third Street Investors Co.*, Henn. Cty. File No. 01–16319. In May 2002, the project owners and lien claimants settled this action for somewhat more than 50 cents on the dollar. As part of the settlement agreement, Peak received $215,088 of its claim for $383,000. Siemens was not a party to the mechanics' lien action.

The bank has held a perfected security interest in Peak's inventory, accounts, including accounts receivable, and proceeds since 1998. In November 2001, Peak defaulted on its loan payments to the bank. On February 20, 2002, prior to the mechanics' lien settlement, Peak entered into a voluntary surrender agreement with the bank and surrendered all right, title, and interest in its accounts receivable to the bank.[1]

On May 24, 2002, as part of the mechanics' lien settlement agreement, a joint check was issued to Peak and the bank in the amount of $215,088. The bank issued payments to one of Peak's subcontractors who had been a party to the mechanics' lien lawsuit and to the attorneys who held an attorney's lien for the work done on the lien action. Both Peak and the bank were aware at this time that Peak owed Siemens $106,781.75 for labor and materials supplied for the project, but the bank did not issue payment to Siemens.

Siemens brought suit against Peak and the bank in October 2002. Default judgment was entered against Peak on December 16, 2002. Both Siemens and the bank moved for summary judgment on June 20, 2003. On June 24, the district court granted an apparent partial summary judgment to Siemens.[2] A trial on damages was held

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. In 1998, Peak owed the bank approximately $600,000; no precise figure for the amount owing on February 20, 2002, was introduced into evidence.

2. In its order, the district court stated that both parties' motions for summary judgment were denied, but in its memorandum, the

on September 15, 2003. The court issued findings and an order granting Siemens judgment of $106,781.75 against the bank. The court held that the funds received by Peak and the bank were trust funds that Peak and the bank were required to hold for the benefit of Siemens pursuant to Minn.Stat. § 514.02.

The bank moved for amended findings; the district court issued amended findings on November 24, 2003, but did not change its conclusions of law or its order for judgment. This appeal followed.

## ISSUE

Did the district court err in interpreting Minn.Stat. § 514.02 (2002) to apply to a third party receiving funds in the ordinary course of business?

## ANALYSIS

█ Statutory construction is a question of law, which this court reviews de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 393 (Minn.1998). Certain rules of construction apply when this court reviews a district court's statutory interpretation. The object of construction of a law is to ascertain and give effect to the legislature's intent. Minn.Stat. § 645.16 (2002). If a law is not ambiguous in its application to an existing situation, however, a court may not ignore the letter of the law in order to pursue what it perceives to be the spirit of the law. *Id.* Thus, unless there is an inherent ambiguity in the law, this court applies the plain meaning of an act using the usual conventions of syntax and grammar. *First Nat'l Bank of the North v. Auto. Fin. Corp.,* 661 N.W.2d 668, 670 (Minn.App.2003), *review denied* (Minn. Aug. 5, 2003).

Minn.Stat. § 514.02, subd. 1(a) (2002), states:

> Proceeds of payments received by a person contributing to an improvement to real estate ... shall be held in trust by that person for the benefit of those persons who furnished the labor, skill, material, or machinery contributing to the improvement. Proceeds of the payment are not subject to garnishment, execution, levy, or attachment.

A party failing to use the funds to pay a person for an improvement is guilty of theft. Minn.Stat. § 514.02, subd. 1(b) (2002). The statute also permits "[a] person injured by a violation of subdivision 1" to bring a civil action for damages, including costs, disbursements, and fees, against the person who committed the theft. Minn.Stat. § 514.02, subd. 1a. This statutory language is clear and unambiguous: a civil action may be taken against the person "who committed the theft." Minn. Stat. § 514.02, subd. 1a.

█ The person responsible for the theft is defined by reference to subdivision 1 as "a person contributing to an improvement to real estate" who receives payment, but who "fails to use the proceeds of a payment ... for the improvement, for the payment for labor, skill, material, and machinery contributed to the improvement[,]" knowing that payment has not been made. Minn.Stat. § 514.02, subd. 1(a), (b). Again, this language is clear and unambiguous: liability for theft is limited to a person who contributes to the improvement in real estate. We therefore conclude that the bank does not fit within this statutory definition, having made no contribution to the improvement in real estate.

court stated that Minn.Stat. § 514.02 controlled the action and that the proceeds were

to be held in trust for Siemens until a hearing on damages could be held.

Further, although Minn.Stat. § 514.02, subd. 1, states that proceeds of payments for improvements to real estate are to be held in trust by the recipient for the benefit of those who furnished labor or materials and that those proceeds are not subject to garnishment, execution, levy, or attachment, the statute also states that "[t]he penalties and remedies provided in this section do not apply to a third party who receives a payment in the ordinary course of business." Minn.Stat. § 514.02, subd. 1(a), (b), (c). The remedy created under this statute is essentially an action in contract. *See Duluth Superior Erection, Inc. v. Concrete Restorers, Inc.*, 665 N.W.2d 528, 538 (Minn.App.2003). The contract to be enforced here is between Peak and Siemens; the bank is merely a third party and is not in privity of contract with Siemens.

■ Siemens argues that Peak's surrender of accounts receivable to the bank is outside of the ordinary course of business. While the statute does not define it, the term "ordinary course of business" has been defined as "[t]he normal routine in managing a trade or business." *Black's Law Dictionary* 356 (7th ed.1999). A bank is in the business of extending credit and, presumably, collecting its loans. The bank here had a long-term lending agreement with Peak and a security interest in Peak's accounts receivable. The bank's collection of what would otherwise be a bad debt was done in the ordinary course of the bank's business, and therefore falls within the statutory exception.

■ Nor do we agree that the rights of an unpaid subcontractor under Minn.Stat. § 514.02 are superior to the rights of a secured creditor, whose perfected security interest is generally effective protection against the claims of purchasers of collateral and creditors. *See* Minn.Stat. § 336.9–201 (2002); *James Talcott, Inc. v.*

*Franklin Nat'l Bank of Minneapolis*, 292 Minn. 277, 284, 194 N.W.2d 775, 780 (1972) (stating that perfected security interest "afford[s] protection against execution creditors, trustees in bankruptcy, and secured parties whose financing statements [are] filed later"). Minn.Stat. § 514.02 deals with the unscrupulous or failing contractor who collects from an owner, but fails to pay subcontractors, and provides both the subcontractor and the owner with a means of recovery and some protection. Nothing in the statute creates a theory of recovery that promotes the rights of an unsecured creditor over those of a secured creditor, with whom the former has no privity of contract.

■ We therefore hold that Minn.Stat. § 514.02 does not apply to a third-party secured creditor who has received funds in the ordinary course of business and who is not in privity of contract with the unsecured creditor.

### DECISION

The district court erred by interpreting Minn.Stat. § 514.02 to apply to a third party with a perfected security interest, who is not in privity of contract with the party asserting a claim under the statute.

**Reversed.**