**STATE of Minnesota, Respondent,**

v.

**Todd Peter HOLMES, Appellant.**

**No. A09–1428.**

Court of Appeals of Minnesota.

Aug. 17, 2010.

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, MN; and Daniel L. Geller, Red Lake County Attorney, Red Lake Falls, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Rachel F. Bond, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by STAUBER, Presiding Judge; LANSING, Judge; and PETERSON, Judge.

## OPINION

LANSING, Judge.

Todd Holmes appeals his conviction of theft by nonpayment for improvements under Minn.Stat. § 514.02, subd. 1(b) (2006). In reaching their verdict, the jury relied on the district court's instruction that the statute prohibits receiving a payment for improvement of real estate and failing to use the proceeds for that improvement. Because the state did not produce evidence to show that Holmes violated the criminal prohibition in section 514.02, subdivision 1(b) of failure to pay others for labor, skills, material, or machinery contributed for the improvement, knowing that these costs remain unpaid, we reverse.

## FACTS

This appeal presents the issue of the proper construction and application of Minn.Stat. § 514.02, subd. 1(b), which im-

poses criminal penalties for theft by non-payment for a real-estate improvement. In his appeal from conviction, Todd Holmes argues that his conduct does not fall within the prohibitions of the statute.

The factual basis for Holmes's conviction is undisputed. IB, a Red Lake County farm owner, asked Holmes, who operates Holmes Barn Restoration, to prepare an estimate for repairs to her barn and house. IB accepted Holmes's bid totaling approximately $9,000 on September 18, 2007. Their contract did not specify a deadline for completion, but Holmes told IB that he planned to begin work in early October and expected to finish both projects by October 15. In compliance with the contract, IB gave Holmes $5,000 as a down payment for materials.

Shortly after IB accepted Holmes's bid, Holmes informed IB that the work on her property would be delayed "a little bit" because of projects related to flooding in southern Minnesota. IB tried to contact Holmes repeatedly throughout October and received no response.

In late October, IB spoke with the Red Lake County Sheriff. The sheriff called Holmes three times in early November, and they eventually spoke on November 13. The sheriff told Holmes that IB wanted her money returned and that Holmes should call IB and reach an agreement with her or he would refer the case to the county attorney for prosecution. Holmes did not call IB, and the sheriff referred the case to the county attorney at the end of November.

At about the same time, Holmes sent IB a letter apologizing for the delay in beginning the work on her property. He said that other customers' failure to pay had brought his business to a halt, that he could not work on her project while the ground was frozen, and that he intended to begin the project in the spring. The rec-ord contains no evidence that Holmes obtained any labor, skill, material, or machinery from anyone for IB's barn and house project.

The state charged Holmes in February 2008 with theft by misrepresentation under Minn.Stat. § 609.52, subd. 2(3)(ii) (2006), which criminalizes the act of obtaining property in exchange for promises made with the intent not to perform. Holmes moved to dismiss the charge for lack of probable cause, and the district court denied the motion. Later, the prosecution amended its complaint to charge Holmes with theft by nonpayment for improvement, Minn.Stat. § 514.02, subd. 1(b), instead of theft by misrepresentation of intended performance. The jury found Homes guilty.

On appeal Holmes contends that, for criminal liability to attach under section 514.02, subdivision 1(b), the state must prove the knowing nonpayment of individuals who contributed to the improvement, not simply the nonperformance of a contract. Holmes also presents argument in support of his alternative claim for a new trial.

## ISSUE

Does Minn.Stat. § 514.02, subd. 1(b), impose criminal liability for a person's failure to use the proceeds of a real-estate-improvement payment for the real-estate improvement?

## ANALYSIS

■ The argument for reversal rests on Holmes's claim that the evidence is insufficient to support his conviction under Minn. Stat. § 514.02, subd. 1(b). Entitled "Nonpayment for Improvement," the statute provides:

If a person fails to use the proceeds of a payment made to that person for the

improvement, for the payment for labor, skill, material, and machinery contributed to the improvement, knowing that the cost of the labor performed, or skill, material, or machinery furnished remains unpaid, and who has not furnished the person making such payment either a valid lien waiver . . . , or a payment bond . . . , [that person] shall be guilty of theft of the proceeds of the payment and is punishable under section 609.52.

Minn.Stat. § 514.02, subd. 1(b). The district court instructed the jury that this statute makes it a crime to receive payment for an improvement to real estate and to fail to use the proceeds of the payment for that improvement. Holmes argues that he cannot be convicted under this statute because the statute requires knowing nonpayment of individuals who contributed to the improvement of real estate and there is no evidence to satisfy this requirement.

Statutory construction is a question of law, which we review de novo. *Rosenberg v. Heritage Renovations, LLC,* 685 N.W.2d 320, 324 (Minn.2004). In ascertaining the meaning of the statute, our goal is to effectuate the legislative intent. Minn.Stat. § 645.16 (2008). If the language of the statute is unambiguous, we apply its plain meaning. *Am. Tower, L.P. v. City of Grant,* 636 N.W.2d 309, 312 (Minn.2001). To determine whether a statute has a plain meaning, we review a statute's content in the full context of the act or provision. *Christensen v. Dep't of Conservation, Game & Fish,* 285 Minn. 493, 499–500, 175 N.W.2d 433, 437 (1970). We must consider sections of a statute together to determine meaning. *Chanhassen Estates Residents Ass'n v. City of Chanhassen,* 342 N.W.2d 335, 339 (Minn.1984). Finally, when construing a statute, we presume that the legislature intends the entire statute to be effective and certain and does not intend

to violate the state or federal constitutions. Minn.Stat. § 645.17(2), (3) (2008).

In response to constitutional challenges, reviewing courts have previously examined the meaning of a prior version of section 514.02, subdivision 1(b). The Minnesota Supreme Court described the operation of the statute as

punish[ing] one who received proceeds for an improvement to real estate knowing that the cost of labor, material, skill, and machinery furnished for that improvement remains unpaid and who further fails to either (1) use the proceeds for the payment of labor, material, skill, and machinery contributed to the improvement, or (2) furnish the person making such payment a valid lien waiver as to the unpaid labor, materials, skill, or machinery contributed to the improvement, or (3) furnish the person making such payment a payment bond for the payment of laborers and materialmen for their contribution to the improvement.

*State v. Reps,* 302 Minn. 38, 46, 223 N.W.2d 780, 785–86 (1974). In response to the challenge that the statute violated Minnesota's constitutional prohibition against imprisonment for indebtedness in the absence of fraud, the court reasoned that a contractor who accepts payment for improvements to which others contributed does so in a fiduciary capacity. *Id.* at 46, 223 N.W.2d at 786. The court concluded that "it is a knowing violation of that trust, rather than a failure to pay a debt, which the statute makes punishable." *Id.*

The statute was amended in 2000 to create a civil cause of action and to change the criminal penalties. 2000 Minn. Laws ch. 430, §§ 1, 2, at 922–23. In conjunction with that change, the legislature also rewrote the language in the provision that became subdivision 1(b). *Id.* § 1, at 922. Following these amendments, we ad-

dressed another constitutional challenge to the statute based on the prohibition of imprisonment for indebtedness. *State v. Bren*, 704 N.W.2d 170, 172 (Minn.App. 2005), *review denied* (Minn. Dec. 13, 2005). We concluded that the statute was constitutional because "the provisions considered crucial in *Reps* remain in the 2000 version of the statute." *Id.* at 176. And we emphasized that "it is the contractor's knowing violation of the 'trust character' of the payments entrusted to him by the homeowner, rather than any failure to pay a debt to the subcontractor, that makes the contractor criminally liable under the statute." *Id.* Although we concluded that Bren's void-for-vagueness argument was not preserved for appeal, we further noted that this claim would fail because "the proscribed conduct was clear: 'the statute's terms are violated if a defendant has received payment and has failed to undertake any one of the three courses of action required by the statute within [fifteen] days after he becomes aware [that] the costs of labor, skill, material, and machinery contributed to that improvement remain unpaid.'" *Id.* at 177 n. 2 (quoting *Reps*, 302 Minn. at 48, 223 N.W.2d at 787).

In considering a civil action for nonpayment, we described the statutory language as "clear and unambiguous" and stated, "Minn.Stat. § 514.02 deals with the unscrupulous or failing contractor who collects from an owner, but fails to pay subcontractors, and [the statute] provides both the subcontractor and the owner with a means of recovery and some protection." *Siemens Bldg. Techs., Inc. v. Peak Mech., Inc.*, 684 N.W.2d 914, 917, 918 (Minn.App. 2004), *review denied* (Minn. Oct. 19, 2004).

■ The district court, however, interpreted the statute to create two independent forms of prohibited conduct: the failure to use the proceeds of a payment made for a real-estate improvement to pay for that improvement; or the failure to use the proceeds of a real-estate improvement payment to pay for labor, skills, material, and machinery that contributed to the improvement. The district court's interpretation implies the unwritten word "or" into the statutory language, which would then read, "If a person fails to use the proceeds of a payment made to that person for the improvement, *or* for the payment for labor, skill, material, and machinery contributed to the improvement, knowing [these costs] remain[ ] unpaid ... [that person] shall be guilty of theft." But the statutory language is not disjunctive. The phrase "for the improvement" describes the purpose of the payment and the phrase that begins "for the payment of labor, skill, material, and machinery" describes how the recipient "fails to use" the proceeds. The language of the statute does not support two distinct bases for criminal liability and instead only prohibits the knowing nonpayment for labor, skill, material, or machinery in the absence of a lien waiver or payment bond. This construction is consistent with the existing caselaw applying and describing the statute.

Our construction is also consistent with other provisions in section 514.02. Subdivisions 2 and 3 address the optional procedure for giving notice of nonpayment and proving knowledge of nonpayment. Minn.Stat. § 514.02, subds. 2, 3 (2008). Both refer to nonpayment of third parties who contributed to the improvement. If subdivision 1(b) described two independent courses of criminal conduct, these statutory provisions would be irrelevant to one of the forms of prohibited conduct. The language in subdivisions 2 and 3 does not indicate that they only apply under a certain factual circumstance and are inoperable in others. *Id.* Although this factor is not conclusive, the inclusion of these subdivisions in the statutory framework

supports a construction of section 514.02, subdivision 1(b), in which the other subdivisions in the statute have meaning and are effective at all times. *See* Minn.Stat. §§ 645.16, .17(2) (directing courts to construe statutes to give effect to all provisions if possible).

We also attach significance to the placement of the prohibition of "theft by nonpayment for improvement" in the overall statutory framework. *See Christensen,* 285 Minn. at 499–500, 175 N.W.2d at 437 (construing statutory language in context of act that contains it). The statute is located in the chapter on mechanic's liens and not within the criminal statutes. This context indicates that the statute is intended to provide a remedy when a property owner has paid for improvements but is subject to a mechanic's lien because the payment has not been passed on to the worker or the provider of materials. This context reinforces the plain meaning that requires the knowing nonpayment for labor, skill, material, or machinery for criminal liability to attach. In contrast, the criminal-code statute defining theft contains a provision prohibiting an act of obtaining property by making a promise with the intent not to perform. Minn.Stat. § 609.52, subd. 2(3)(ii).

Notably, the district court's reading appears to conflict with the constitutional bar on criminal liability for indebtedness without proof of fraud because it would criminalize nonperformance without requiring "intent not to perform," unlike the specific requirement of section 609.52, subdivision 2(3)(ii). In upholding the constitutionality of section 514.02, subdivision 1(b), Minnesota courts have relied on the "trust character" of payments when an owner pays a contractor. *Reps,* 302 Minn. at 46, 223 N.W.2d at 785–86; *Bren,* 704 N.W.2d at 176. Liability based on a contractor's own nonperformance would not involve a know-ing violation of any "trust capacity" because the money would not have been entrusted to the contractor for payment to a third-party. Instead, liability could be based simply on breach of contract with no mens rea requirement. The potential constitutional conflict again reinforces a plain meaning that requires the knowing nonpayment of contributors to the improvement. *See* Minn.Stat. § 645.17 (stating that courts should presume legislature does not intend to violate state or federal constitution).

For these reasons, we conclude that the language in section 514.02, subdivision 1(b), is clear and unambiguous. But we believe it is useful to discuss the prior version of this statute and its legislative history because they are additional indications of the legislative intent as embodied in the plain meaning of the statute.

The previous version of the statute did not create two forms of prohibited conduct. Before 2000 the statute stated, "If a person, on any improvement to real estate ..., fails to use the proceeds of any payment made to that person *on account of such* improvement by the owner of such real estate or person having any improvement made, for the payment for labor, skill, material, and machinery...." Minn. Stat. § 514.02, subd. 1 (1998) (emphasis added). The language "on account of such improvement" was replaced with "for the improvement." 2000 Minn. Laws ch. 430, § 1, at 922. In its earlier formulation, the purpose of the payment was for an improvement and the prohibited conduct was failing to use the payment for unpaid labor, skill, material, or machinery. This version does not allow for an insertion of "or" to create an interpretation in which a person is liable for failing to use the proceeds of a payment that is made for an improvement to pay for that improvement. Also, the legislative report on the 2000

amendments highlights the addition of a civil action and a change in the criminal penalties but does not discuss the creation of a new form of prohibited conduct, which would constitute a major change to the statute. H. Research, Minn. H.R., 81st Sess., Bill Summary of H.F. 2563, second engrossment, (Mar. 10, 2000).

 There is no evidence that others contributed labor, skills, material, or machinery to improve IB's property, and therefore the record does not show that Holmes knew that others remained unpaid for work on IB's property when he retained IB's $5,000 payment. Although Holmes's failure to proceed on IB's improvement is wrongful, the legislature has not identified this conduct as criminal. A property owner in IB's position must pursue her remedies in a civil action rather than seeking criminal enforcement. Without proof of Holmes's knowing nonpayment of contributors to improvements of IB's property, the evidence is insufficient to support Holmes's conviction and his conviction must be reversed. *See State v. Peterson*, 673 N.W.2d 482, 486 (Minn.2004) (requiring proof of every element beyond reasonable doubt). Because we conclude that reversal is required, we need not reach Holmes's alternative arguments that would support remand for a new trial.

## DECISION

The crime of theft by nonpayment for improvements under Minn.Stat. § 514.02, subd. 1(b), requires the failure to pay others for labor, skills, material, or machinery contributed to an improvement of property knowing that these costs remain unpaid. The state did not prove these elements, and Holmes's conviction must be reversed.

**Reversed.**