# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 11-3397

———————

| | | |
|---|---|---|
| In re:  Scott Alfred Thompson; Kirsten Marie Thompson, | * * * | |
| Debtors. | * | |
| ---------------------------------------------- | * | |
| Reshetar Systems, Inc., | * | Appeal from the United States |
| | * | Bankruptcy Appellate Panel |
| Appellant, | * | for the Eighth Circuit. |
| | * | |
| v. | * | |
| | * | |
| Scott Alfred Thompson, | * | |
| | * | |
| Appellee. | * | |

———————

Submitted: May 17, 2012
Filed:  July 30, 2012

———————

Before LOKEN and BEAM, Circuit Judges, and PERRY,* District Judge.

———————

LOKEN, Circuit Judge.

Construction 70, Inc., contracted to build an Applebee's restaurant in Cambridge, Minnesota, promising to "promptly pay each Subcontractor, upon receipt of payment from the Owner . . . the amount to which said Subcontractor is entitled."

———————

*The Honorable Catherine D. Perry, Chief Judge of the United States District Court for the Eastern District of Missouri, sitting by designation.

In building the restaurant, Reshetar Systems, Inc., became the Subcontractor for carpentry and drywall work. The subcontract provided that Reshetar would be paid for its work "upon receipt [by Construction 70] of payment by Owner." Reshetar satisfactorily completed its work in January 2004 but was not paid $48,293.81 of the amount owed. Construction 70 settled a dispute with Applebee's in March 2007 and offered Reshetar a smaller sum, claiming it was Reshetar's pro rata share of the settlement proceeds.

Reshetar rejected the offer and sued Construction 70 and Scott A. Thompson, its owner and manager, in state court for breach of contract, conversion, unjust enrichment, and violations of Minn. Stats. §§ 337.10 and 514.02. Thompson signed a $78,000 confession of judgment to settle that lawsuit in June 2009. Thompson and his wife filed a petition for Chapter 7 bankruptcy relief in December 2009, with the debt to Reshetar unsatisfied. Reshetar commenced this adversary proceeding to have the debt declared nondischargeable, in whole or in part, and now appeals the Bankruptcy Appellate Panel's (BAP) determination that neither 11 U.S.C. § 523(a)(4) nor 11 U.S.C. § 523(a)(6) bars discharge of the debt.

Section 523(a) defines classes of debts that are excepted from a Chapter 7 debtor's discharge in bankruptcy. Section § 523(a)(4) bars discharge for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny"; § 523(a)(6) bars discharge for a debtor's "willful and malicious injury" to another entity or its property. We construe these exceptions narrowly, imposing the burden of proof on the creditor opposing discharge. In re Nail, 680 F.3d 1036, 1038 (8th Cir. 2012). Here, the bankruptcy court[2] granted judgment for the Debtors after the parties submitted stipulated facts and a short bench trial. The BAP affirmed. Reviewing findings of fact for clear error and the BAP's conclusions of law *de novo*, we affirm.

---

[2]The Honorable Gregory F. Kishel, Chief Judge of the United States Bankruptcy Court for the District of Minnesota.

-2-

**I. The § 523(a)(4) Claims.**

    **A. Fraud or Defalcation While Acting in a Fiduciary Capacity.** "Whether a relationship is a 'fiduciary' one within the meaning of § 523(a)(4) is a question of federal law." In re Nail, 680 F.3d at 1039 (quotation omitted). Section 523(a)(4) uses the term fiduciary "in a 'strict and narrow sense,' and therefore does not embrace trustees of constructive trusts imposed by law because of the trustee's malfeasance." Hunter v. Philpott, 373 F.3d 873, 876 (8th Cir. 2004). The statute "speaks of technical trusts, and not those which the law implies from the contract." In re Nail, 680 F.3d at 1039 (quotation omitted). "It is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex maleficio. He must have been a trustee before the wrong and without reference thereto." Davis v. Aetna Acceptance Co., 293 U.S. 328, 333 (1934). Trusts satisfying § 523(a)(4) can be created by state statute or by common law, as well as by contract. In re Long, 774 F.2d 875, 878 (8th Cir. 1985). Reshetar argues that Thompson was a § 523(a)(4) fiduciary by reason both of a Minnesota statute and his common law duties as an officer of an insolvent corporation.

    **1. Minn. Stat. § 514.02.** Reshetar first contends that Minn. Stat. § 514.02 created a § 523(a)(4) fiduciary relationship between Construction 70 and its subcontractors. Part of Chapter 514, which creates statutory liens for those who improve real estate, § 514.02, subd. 1(a), provides:

> Proceeds of payments received by a person contributing to an improvement to real estate within the meaning of section 514.01 *shall be held in trust* by that person for the benefit of those persons who *furnished* the labor, skill, material, or machinery contributing to the improvement. Proceeds of the payment are not subject to garnishment, execution, levy, or attachment. *Nothing contained in this subdivision shall require money to be placed in a separate account and not commingled with other money of the person receiving payment or create*

-3-

*a fiduciary liability* or tort liability on the part of any person receiving payment or entitle any person to an award of punitive damages among persons contributing to an improvement to real estate under section 514.01 for a violation of this subdivision. (Emphasis added.)

The first question in considering this contention is whether the state statute created an express trust, because § 523(a)(4) "does not operate in the absence of an express trust." Matter of Dloogoff, 600 F.2d 166, 170 (8th Cir. 1979). The bankruptcy court and the BAP concluded that § 514.02 did not create an express trust cognizable under § 523(a)(4) because of the statute's "express bar against the creation of a fiduciary relationship." We agree. The Minnesota Legislature added the language at issue in 2000, when it amended § 514.02 to add a private right of action. Adding the words "held in trust" to § 514.02, subd. 1(a), was "intended to incorporate the implied trust-like character" that prevents the theft-of-proceeds offense in subdivision 1(b) from violating the State's constitutional ban on imprisoning a person for debt. State v. Bren, 704 N.W.2d 170, 175 (Minn. App. 2005); see State v. Reps, 223 N.W.2d 780, 784-86 (1974). However, the Minnesota Court of Appeals concluded, the additional proviso disclaiming the creation of fiduciary liability means that the new civil action created in the 2000 amendments "must be in the form of a contract action." Duluth Superior Erection, Inc. v. Concrete Restorers, Inc., 665 N.W.2d 528, 538 (Minn. App. 2003). "In other words," the BAP explained in a later case raising this § 523(a)(4) issue, a general contractor and the bankruptcy debtor, its principal, "received payment and had an obligation to protect the interest of [the subcontractor], but neither . . . had a fiduciary liability to [the subcontractor]." In re Freier, 402 B.R. 891, 900 (B.A.P. 8th Cir. 2009), rev'd on other grounds, 604 F.3d 583 (8th Cir. 2010). This is not the kind of "technical trust" that § 523(a)(4) requires.

Even construing § 514.02, subd. 1(a), as creating an express trust would not change our conclusion that the statute did not create a fiduciary responsibility in the "strict and narrow sense" that § 523(a)(4) requires. "It is not enough that a statute

-4-

purports to create a trust: A state cannot magically transform ordinary agents, contractors, or sellers into fiduciaries by the simple incantation of the terms 'trust' or 'fiduciary.' Rather, to meet the requirements of § 523(a)(4), a statutory trust must (1) include a definable res and (2) impose 'trust-like' duties." In re Nail, 680 F.3d at 1040 (quotation omitted). Section 514.02 does not require general contractors to place funds received for subcontractors into separate accounts, nor does it impose other affirmative "trust-like" duties such as detailed record keeping. Even more significantly, the statute only applies to proceeds received for the benefit of subcontractors "who *furnished*" labor or materials contributing to the improvement of real estate. Subdivision 1(b) is not violated unless "others contributed labor, skills, material, or machinery to improve [real] property." State v. Holmes, 787 N.W.2d 617, 623 (Minn. App. 2010). In other words, the purported trust is not created *until the subcontractor has a contractual right to be paid.* For a debt to be nondischargeable under this part of § 523(a)(4), the debtor "must have been a trustee before the wrong and without reference thereto." Davis, 293 U.S. at 333; see Matter of Marchiando, 13 F.3d 1111, 1115-17 (7th Cir.), cert. denied, 512 U.S. 1205 (1994).

For these reasons, we conclude that no part of the debt is nondischargeable under this subpart of § 523(a)(4) because Minn. Stat. § 514.02 did not create the requisite "fiduciary capacity."[3] Like the BAP, we need not consider Thompson's

---

[3]Other States have lienholder protection statutes, but they differ significantly in the extent to which they create express trusts and impose trust-like duties that can satisfy the strict requirements of § 523(a)(4). Many circuit court decisions have addressed this issue, reaching what may appear to be differing results. But ignoring the few cases where the issue was either conceded or decided without careful analysis of § 523(a)(4) principles, courts have barred discharge when the state statute had detailed trust provisions and barred all diversion of funds owed present *and future* lienholders, but have held that discharge is not barred by statutes imposing criminal penalties but not trust-like duties and fiduciary liability. Compare In re Johnson, 691 F.2d 249, 250-54 (6th Cir. 1982) (Mich. statutes), Carey Lumber Co. v. Bell, 615 F.2d 370, 374-76 (5th Cir. 1980) (Okla. lien statutes), In re Baird, 114 B.R. 198

contention that § 514.02, as construed in <u>Amcon Block & Precast, Inc. v. Suess</u>, 794 N.W.2d 386 (Minn. App. 2011), "does not apply to commercial contractors."

**2. Minnesota Common Law.** Alternatively, Reshetar argues that $16,131.81 of the debt is nondischargeable under § 523(a)(4) because Thompson's payments to himself after Construction 70 received settlement proceeds from Applebee's breached a Minnesota common law fiduciary duty: "when a corporation is insolvent, or on the verge of insolvency, its directors and officers become fiduciaries of the corporate assets for the benefit of creditors." <u>Snyder Elec. Co. v. Flemming</u>, 305 N.W.2d 863, 869 (1981). This contention is without merit. First, this alleged fiduciary capacity is not cognizable under § 523(a)(4) -- it is not a technical trust or other fiduciary relation that "call[s] for the imposition of the same high standard," nor does it have "an existence independent of the debtor's wrong." <u>Marchiando</u>, 13 F.3d at 1115. Second, even if this common law duty created a cognizable fiduciary capacity, it is limited to precluding directors and officers of insolvent corporations from engaging in "self-dealings to the detriment of other creditors." <u>St. James Capital Corp. v. Pallet Recycling Assoc. of N. Am.</u>, 589 N.W.2d 511, 517 (Minn. App. 1999). The bankruptcy court found that Reshetar failed to prove self dealing that violated the duty, a finding that was not clearly erroneous.[4]

_____

(B.A.P. 9th Cir. 1990) (Ariz. Construction Trust Fund Statute), and <u>Matter of Kawczynski</u>, 442 F. Supp. 413 (W.D.N.Y. 1977) (N.Y. Lien Law), <u>with</u> <u>In re Nicholas</u>, 956 F.2d 110 (5th Cir. 1992) (Tex. Construction Trust Fund Statute), <u>Matter of Cross</u>, 666 F.2d 873, 881 & n.13 (5th Cir. 1982) (Ga. lien statute), <u>In re Pedrazzini</u>, 644 F.2d 756, 758-59 (9th Cir. 1981) (Cal. statutes), <u>Matter of Angelle</u>, 610 F.2d 1335 (5th Cir. 1980) (La. law), and <u>Matter of Dloogoff</u>, 600 F.2d at 168-70 (Neb. lien statute).

[4]This finding also defeats any claim that Thompson was guilty of embezzling Construction 70's property when he disbursed a portion of the settlement proceeds to himself, a claim Reshetar did not clearly present to the bankruptcy court, to the BAP, or to this court.

**B. Embezzlement.** "Embezzlement, for purposes of section 523(a)(4), is the fraudulent appropriation of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come." In re Nail, 680 F.3d at 1042 (quotation omitted). Reshetar argues that the debt is nondischargeable because, under Minn. Stat. § 514.02, "funds paid by Applebee's for Reshetar Systems work belong to Reshetar Systems," and therefore Thompson's use of those funds for any purpose other than paying Reshetar was a misappropriation that was "unlawful under the two written contracts and Minnesota law." The BAP agreed that Reshetar had a contractual right to be paid for its work but concluded: "Nothing in [§ 514.02], the contract, or the subcontract, however, gave Reshetar specific property rights in the payments Construction 70 received from Applebee's . . . . Construction 70's use of its own property did not amount to embezzlement." We agree.

"One cannot embezzle one's own property." In re Belfry, 862 F.2d 661, 662 (8th Cir. 1988). Payments Construction 70 received from Applebee's came lawfully into the hands of Construction 70. The payments were subject to contractual and statutory obligations to pay subcontractors amounts owing for their completed work but, as in Belfry, 862 F.2d at 663, there was no obligation to segregate specific funds for payment to specific subcontractors. Thus, like the bank's security interest in In re Phillips, 882 F.2d 302, 304 (8th Cir. 1989), Reshetar's right to be paid did not "give it an absolute ownership interest nor . . . defeat [Construction 70's] ownership interest" in the payments. In these circumstances, Construction 70's failure to pay Reshetar "was a dischargeable breach of contract, not a nondischargeable embezzlement." In re Nail, 680 F.3d at 1042, quoting Werner v. Hofmann, 5 F.3d 1170, 1172 (8th Cir. 1993). In addition, as in In re Littleton, 942 F.2d 551, 556 (9th Cir. 1991), the bankruptcy court did not clearly err when it found no intent to defraud because Thompson "applied [his] entire effort and resources to make the business survive."

**C. Larceny.** Reshetar's § 523(a)(4) larceny claim is without merit because Construction 70's original possession of the project and settlement payments by Applebee's was lawful. See Werner, 5 F.3d at 1172 .

## II. The § 523(a)(6) Claim.

Section 523(a)(6) bars discharge of debts "for willful and malicious injury" of a creditor or its property. To be "willful," the injury must be "intentional or deliberate." In re Long, 774 F.2d at 880. "To qualify as 'malicious,' the debtor's action must be targeted at the creditor . . . at least in the sense that the conduct is certain or almost certain to cause financial harm." In re Masden, 195 F.3d 988, 989 (8th Cir. 1999) (quotation omitted). The bankruptcy court found that Thompson's conduct was not malicious: "there just isn't any evidence [of malice] here because the actions of the debtor . . . all were undertaken, according to his . . . uncontroverted testimony, in an effort to try to make good out of a bad situation. . . . [T]he evidence doesn't support any guile, any intent to shaft anybody on the part of [Construction] 70 or Mr. Thompson." The BAP expressly upheld this finding. On appeal, Reshetar advances a different interpretation of the evidence, emphasizing its rejected theory that Construction 70 and Thompson were guilty of theft and conversion of payments that were Reshetar's property. After careful review of the record, we agree with the BAP that the finding of no malicious injury was not clearly erroneous, which resolves the § 523(a)(6) issue.

The judgment of the Bankruptcy Appellate Panel is affirmed.

_____